IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | Case No.: 1:14-CR-333-AKK-JEO |
| ) | |
| RICK LEE EVANS ) | |

### MR. EVANS' SECOND MOTION TO DISMISS

Comes now, Mr. Rick Lee Evans, by counsel and moves this Honorable Court to dismiss the Indictment because the pre-indictment delay prejudiced Mr. Evans by depriving him of the broad protections afforded by the Due Process Clause of the Fifth Amendment. The alleged criminal activity listed in the Indictment, if true, was committed between 2007 and 2008. M.C. first disclosed the allegations in June/July, 2009. By waiting until October 2014 to indict Mr. Evans, even though no investigation occurred between 2010 and 2014, the government gained an unfair tactical advantage before pursuing criminal charges against Mr. Evans. The delay prejudiced Mr. Evans by depriving him of fundamental rights including, without limitation, the ability to locate, interview, and subpoena several key witnesses in his defense. In accordance with the Due Process Clause, this case should be dismissed.

### Case Background

From approximately May, 2007 through December, 2008, M.C. lived in Heidelburg, Germany with Susan and Rick Evans. M.C.'s mother was deployed through most of that time. While M.C. was able to see her stepfather and mother periodically throughout this time, she was primarily in the care of the Evans family. During the majority of that time, Mr. Evans was employed by the U.S. Army. Mr. Evans was released from active duty on June 28, 2008 but

remained in the reserves until December 10, 2010. Mr. Evans remained in Heidelburg through November, 2011.

In late June/early July, 2009, J.Johnson, the stepgrandmother of M.C., reported that while M.C. was living with her, M.C. allegedly disclosed inappropriate sexual contact with Mr. Evans during her time in Germany. On or about July 7, 2009, M.C. was interviewed by the Children's Hospital and Prevention Services ("CHIPS Center") about the alleged offense. During this visit, a medical examination was conducted and determined to be "normal". Therefore, the medical examination could not confirm nor exclude the possibility of sexual abuse. On July 10, 2009, a Child Forensic Interview Specialist at Prescott House Child Advocacy Center conducted a video-recorded interview of M.C. wherein she detailed sexual activity that allegedly occurred while she lived in Germany. Following the disclosure and the July, 2009 interview of M.C., German authorities, with the assistance of Army CID, began investigating the case. During the course of the investigation, authorities in both Germany and the United States conducted more than 20 interviews of Mr. Evans' co-workers, other children, parents of children with whom Mr. Evans came in contact, M.C.'s teachers and therapist in the United States, and many of M.C.'s relatives. Additionally, German authorities conducted a search on Mr. Evans' home while U.S. authorities conducted a search on Mr. Evans' storage unit located in Alabama. Based on evidence located in the storage unit in Alabama, U.S. authorities conducted DNA testing.

In November, 2009, M.C. was interviewed by Army CID. While M.C. again alleged that there was inappropriate sexual contact with Mr. Evans, M.C. provided multiple inconsistent statements. Following the November session, additional interviews were conducted with people that M.C. alleged either witnessed the alleged offense or other possible victims none of whom

confirmed any knowledge of the abuse. On May 19, 2010, a German Forensic Psychologist issued an opinion regarding the integrity of the interviews and the credibility of M.C. On May 25, 2010, the German prosecutor terminated the investigation into the sexual abuse of M.C. On January 24, 2011, U.S. authorities contacted German authorities and requested the release of the proceedings in accordance with article VII(3)(c) NATO-Status of Forces Agreement (SOFA) so that U.S. authorities could assume jurisdiction under the Military Extraterritorial Jurisdiction Act. From information provided to the defense, it does not appear that any further investigation was conducted on this case. DOJ attorney Sarah Chang and AUSA Daniel Murdock did meet with M.C. on August 8, 2014 but that was presumably in preparation for testifying. On October 31, 2014, Mr. Evans was indicted in the Northern District of Alabama in a one count indictment, alleging that Mr. Evans violated 18 U.S.C. § 2241 - aggravated sexual abuse of a child.

**Argument**

While the "statute of limitations is the primary guarantee against bringing stale charges," the government's delay between the commission of an offense and the initiation of prosecution that intentionally or recklessly prejudices the defendant requires dismissal of an indictment. *U.S. v.* Marion, 404 U.S. 307, 322 (1971); *U.S. v. Lovasco*, 431 U.S. 783 (1977); *U.S. v. Eight Thousand Eight Hundred and Fifty Dollars in U.S. Currency*, 461 U.S. 555, 563 (1981). In *Lovasco*, the Supreme Court left to the lower courts the task of developing the standard for determining whether pre-indictment delay violates Due Process. *Lovasco*,431 U.S. at 796.

Following *Lovasco*, there is a circuit split for determining whether a Due Process violation has occurred due to pre-indictment delay. In the Fourth, Seventh, and Ninth Circuits, courts require the government to explain reasons for the delay upon a showing of prejudice to the

3

defendant.  *See Howell v. Barker*, 904 F.2d 889 (4th Cir. 1990); *U.S. v. Sowa*, 34 F.3d 447 (7th Cir. 1994); *U.S. v. Valentine*, 783 F.2d 1413 (9th Cir. 1986).  In a 2013 case from the Second Circuit, the Court seized upon Footnote 17 of *Lovasco*, and found that a Due Process violation can and should be found upon a showing of prosecutorial delay when it incurred with reckless disregard of the circumstances known to the prosecutor suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense.  *See Lovasco*, 431 U.S. at 795, fn. 17; *U.S. v. Santiago*, Post-Hearing December on Defendant's Motions to Dismiss, Case No. 1:13-CR-39 (S.D.N.Y. 2013).  The Eleventh, Fifth, and Third circuits require the defense to affirmatively prove that the government possessed an improper motive in delaying the criminal prosecution.  *See U.S. v. Benson*, 846 F.2d 1338 (11th Cir. 1988); *U.S. v. Crouch*, 84 F.3d 1497 (5th Cir. 1996); *U.S. v. Ismaili*, 828 F.2d 153 (3d Cir. 1987).  Under any standard, the indictment should be dismissed because the government's decision to delay Mr. Evans' trial until more than 5 years after the disclosure has violated those "fundamental conceptions of justice which lie at the base of our civil and political institutions."  *Lovasco*, 431 U.S. at 790.

I.  **Even under the stricter Eleventh Circuit standard, the pre-indictment delay violated Due Process**

Under Eleventh Circuit precedent, a defendant bears the burden of proving he suffered prejudice because of the pre-indictment delay and that such delay was a course intentionally pursued by the government for improper purposes.  *See Benson*, 846 F.2d at 1341.  As explained above, Mr. Evans stands to suffer irreparable harm because of the government's delay.  Because the government waited more than 5 years since the disclosure, many of the witnesses that have

provided exonerating statements can no longer be located. And, if located, are in foreign countries where Mr. Evans cannot subpoena their testimony. These witnesses include: Ms. Verena Otto-Lotz, M.C.2, M.C.3, M.C.4 and M.C.5, and KOK Bernhard Griebel. The improper motive of the government is evidenced by the initiation of the criminal case more than 5 years after the disclosure. The government's delay came after Mr. Evans was out of the reserves, had left Germany, and more than 4 years since the last witness interview had been conducted. Mr. Evans avers that the government intentionally deprived him of his basic rights to defend his case. *See Lovasco*, 431 U.S. at 796 (finding that actual prejudice generally means the loss of documentary evidence or the unavailability of a key witness).

    A.    **Mr. Evans has suffered great prejudice by the delay because more than one witness providing exculpatory statements cannot be located and/or cannot be subpoenaed to testify**

If Mr. Evans were able to locate these witnesses and subpoena them to testify on his behalf, defense would expect the testimony to be consistent with statements made in 2009 and 2010. Mr. Evans would expect Ms. Otto-Lotz to testify that she is a forensic psychologist hired by the German prosecutor to analyze the two interviews of M.C. and that based on the inconsistent statements and uncorroborated information regarding other alleged "victims" and "witnesses", Ms. Otto-Lotz believed that M.C. statements were not reliable. M.C.2 would be expected to testify that M.C.2 was not in Germany with M.C. even though M.C. made a statement that M.C.2 or M.C.3 lived next door to her in Germany and that Mr. Evans taught she and M.C.2 or M.C.3 how to have sex and took pictures of them having sex. Therefore, M.C.2 would deny that he was a witness or a victim of any offense as alleged by M.C.. M.C.2's last known whereabouts were in Missouri in 2009. M.C.3 would testify that M.C.3 did not live in

5

Heidelburg, Germany where the alleged offenses took place, even though M.C. made the statements about M.C.2 and M.C.3 described above.  Therefore, M.C.3 would deny that he was a victim or witness to the offense as alleged by M.C.  M.C.4 and M.C.5 would be expected to testify that they never spent the night at Mr. Evans' house and would deny that they witnessed or were victims of any of the alleged events described by M.C.  They also would deny that they have a brother, with whom M.C. alleges that she had sex while M.C., M.C.4, and M.C.5 were in the care of Mr. Evans.  The last known address for M.C.4 and M.C.5 is somewhere in Australia.  KOK Griebel is believed to be the lead investigator in Germany.  It appears that he coordinated the efforts of the investigation by the German authorities and Army CID.  KOK Griebel would be able to testify regarding all of the efforts made to investigate the case, the findings, including the determination that "Eric" and "Reena" were fictional people even though M.C. alleged that Eric was a victim to or a witness of the allegations and that she told Reena about the events.  The last known whereabouts of KOK Griebel are in Heidelburg, Germany.  All of this testimony would undermine the prosecution's case and is critical to Mr. Evans' defense.  Without the testimony of these key witnesses, Mr. Evans will be deprived of his fundamental right to defending his case.

      Should the government attempt to introduce expected 404(b) evidence that Mr. Evans' violated the "no touch" policy while working at the CDC in 2009, Mr. Evans' will object on the basis that it is not a "bad act" and cannot be introduced under the Rules of Criminal Evidence.  However, should the government succeed in its attempt to introduce the evidence, Mr. Evans also will be prejudiced unless he can call a witness from Children Youth Services ("CYS") who administered the Touch Policy.  The whereabouts of the CYS administrators are unknown at this time, but all were available and working at CYS in 2009/2010 when the investigation began  and

ended . Specifically, the Touch Policy states that "Appropriate touching involves: . . . child sitting on lap." *See* bates # 177. Because the accusation against Mr. Evans is that he violated the Touch Policy by allowing children to sit on his lap, Mr. Evans would have to insist on calling someone to introduce the Touch Policy for purposes of showing that no violation actually occurred. By waiting more than 4 years to prosecute this case, Mr. Evans is unaware of the current whereabouts of these witnesses. But, their last known addresses were all in Germany, prohibiting Mr. Evans from issuing subpoenas for their testimony. Their testimony regarding the Touch Policy is exonerative of the alleged violation and is crucial to Mr. Evans' defense, especially considering the extraordinary impact that the 404(b) testimony has on a case where the only direct testimony linking Mr. Evans to the offense is from M.C., whose credibility is extremely questionable.

There also may be other key witnesses not yet identified by the defense because as of the filing of this Motion, the government still has not provided Mr. Evans with the German file in its entirety. Until Mr. Evans has an opportunity have the file translated, defense counsel cannot represent to the Court that there are not other potential exculpatory witnesses. Moreover, at the time of the filing of this Motion, Mr. Evans also has requested the Army CID file in its entirety to determine whether Army CID conducted any witness interviews after October, 2010 that may be exculpatory.

    **B.**    **The pre-indictment delay allowed the government to gain a tactical advantage**

By waiting more than 5 years after the disclosure to indict Mr. Evans, the government gained a tactical advantage over Mr. Evans. When M.C. first disclosed, Mr. Evans was a United States citizen in the Army Reserves. Therefore, the military and/or the United States may have

had jurisdiction over this case. Army CID was intimately involved throughout the case, including, without limitation, notifying Army authorities of the initial disclosure, conducting the November, 2009 interview of M.C., maintaining a file marked with a CID file number, conducting a search on Mr. Evans' storage unit, processing DNA samples from items found in the storage unit, and interviewing multiple potential witnesses in both Germany and the United States. However, it was determined, for a reason not now known to Mr. Evans, that the German authorities would prosecute the case.[1]

Following Germany's decision to dismiss the prosecution in May, 2010, Army CID continued to interview potential witnesses and conduct lab tests on DNA and samples recovered from items in Mr. Evans' storage unit. There are notes from the CID file stating that they were informed on July 2, 2010 that the German authorities had discontinued the proceedings of sexual abuse. *See* CID Form 94, bates # 291. After that discussion, Army CID drafted a lab request for the evidence seized at Mr. Evans' storage facility on July 19, 2010. Id. The notes follow that on August 11, 2010, a Captain Murphy, V Corps, indicated that after the results were received, that CID would brief the German prosecutors to determine if they would reopen their investigation. It is clear from the discovery that those results were received by September 1, 2010 and ruled out DNA from M.C. being present on any of the items. CID Form 94, bates # 309. On October 7, 2010, Special Agent Saylor with the United States Army received the German translation of their investigation. Id.

In light of the timeline, it was clear by October 7, 2010 that the DNA did not corroborate

---

[1]Simultaneously with this Motion, Mr. Evans has requested from the government the entire CID file to determine when and how the decision was made that the German authorities would proceed with this case.

M.C.'s statements and that the German authorities would not reopen the investigation into the sexual abuse allegation. Yet, the government did not request jurisdiction at this time. In fact, they did not request jurisdiction until January 24, 2011, the month after Mr. Evans was released from the Reserves. In the request, Ms. Sofie Zach, a legal advisor in the U.S. Army, requested German authorities to release the proceedings in accordance with article VII(3)(c)NATO-Status of Forces Agreement. *See* Bates # 113. Specifically, Ms. Zach stated: "US Military authorities are interested in conducting a criminal investigation under MEJA proceedings since the above proceedings have terminated. Military authorities understand and respect the reasons for the decision which led to the discontinuation of German criminal proceedings. However, these reasons do not conflict with possible successful American criminal proceedings. The statement of the child and the evidence were taken under the provisions of US law and no indication for rejection. US Military prosecution is of the opinion in US proceedings Mr. Evans will be sentenced to serve several years in jail. Also, the mother of the victim is highly interested in criminal charges." Id.

   Yet, even though the request was made in January, 2011, it appears that no further investigation was conducted after October, 2010. But, the government did not indict Mr. Evans until October, 2014 - more than five years after the initial disclosure, four and a half years after the German government dismissed the charges, four years after the last investigation was conducted, and nearly four years after the United States assumed primary jurisdiction over the case. Mr. Evans believes that under Status of Enforcement Agreement, the U.S. government could have prosecuted any time after the disclosure, including possibly holding a court-martial since Mr. Evans was still in the Reserves and working for the Department of Defense. The

intentional choice to allow the German authorities primary jurisdiction and then do absolutely no investigation on the case from October, 2010 through October, 2014, caused the government to gain tactical delay because during these 4 years, memories changed and witnesses disappeared - all of which the government was aware when they brought this case in October, 2014.[2]

II.  **The proper standard for a due process violation is to balance the prejudice against the government's reasons for delay**

While the Eleventh Circuit panel decision requires the defendant to prove that the government had an improper motive in delaying the criminal prosecution, this standard has never been approved by the Supreme Court. In fact, in *Lovasco*, the Court reviewed the government's reasons for pre-indictment delay, accepting that the government's assertions, in briefings, and at oral arguments were made in "good faith" and sufficiently justified its seventeen-month delay. *Lovasco*, 431 U.S. at 796. The Court made no mention of an affirmative burden on the defense to prove an improper motive. To the contrary, by searching the record for the government's representation, the Court implicitly suggested that the government must establish a proper motive for the tactical delay.

In light of *Lovasco*, the proper standard for evaluating a Due Process claim for pre-indictment delay can be found in the Fourth Circuit's decision in *Howell v. Barker*, 904 F.2d at 895.. In *Howell*, the Fourth Circuit determined that once a defendant proves actual prejudice due

---

[2]Mr. Evans believes that in accordance with the Status of Forces Agreement ("SOFA"), the United States had concurrent jurisdiction throughout the German investigation of this case. Therefore, Mr. Evans has concerns about why the United States chose to allow Germany to prosecute the case and did not assume jurisdiction until after the United States was dissatisfied with the outcome. If Mr. Evans is correct about the jurisdictional issue, Mr. Evans believes this is even more proof of the tactical delay by the U.S. government.

to the delay, the government must come forward and provide its reasons for the delay. The reasons are then balanced against the defendant's prejudice to determine whether the defendant has been denied due process." *Howell*, 904 F.2d 895. The Fourth Circuit opined regarding the more stringent standard of requiring the defendant to prove improper motive by the government, "Taking this position to its logical conclusion would mean that no matter how egregious the prejudice to a defendant, and no matter how long the preindictment delay, if a defendant cannot prove improper prosecutorial motive, then no due process violation has occurred. This conclusion, on its face, would violate fundamental conceptions of justice, as well as the community's sense of fair play. Moreover, this conclusion does not contemplate the difficulty defendants either have encountered or will encounter in attempting to prove improper prosecutorial motive. . . . Assuming the defendant can establish actual prejudice, then the court must balance the defendant's prejudice against the government's justification for delay." *Id*.

It is also important to consider the Supreme Court's own words in describing the holding in *Lovasco*. In its 1983 opinion in *U.S. v. Eight Thousand Eight Hundred and Fifty Dollars*, the Court stated that pre-indictment claims can prevail either "upon a showing that the Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage *or* in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges. 461 U.S. at 563; *see also U.S. v. Sowa*, 34 F.3d at 451 ("Once the defendant has cleared the monumental hurdle of proving prejudice, the government should explain its reasons."); *U.S. v. Valentine*, 783 F.2d at 1416 (balancing prejudice against the government's reasons for delay). *Lovasco* cautions that decisions about whether a due process violation has occurred must be left to lower courts. *Lovasco*, 431 U.S. at 796. The only pre-indictment delay that *Lovasco*

holds is acceptable is where the delay is due to an ongoing investigation. *Id*. at 795-96. It is clear from the record provided by the government that no investigation occurred after October 7, 2010; therefore the government cannot rely on investigative delay for its objection to this Motion.

In the instant matter, the investigation was complete at the latest October 7, 2010. When asked about the delay on a phone conference with government counsel on or about December 9, 2014, government counsel stated that new information/evidence was discovered following the decision by Germany to dismiss the charges. However, no new information was found and no investigation occurred after October, 2010, save for what appears to be "trial prep" with M.C. in August, 2014. Balanced against the extreme and actual prejudice suffered by Mr. Evans, the government's lack of justification weighs in favor of dismissal of the indictment.

**Conclusion**

For the reasons stated above, Mr. Evans respectfully requests this Honorable Court to find that the pre-indictment delay has violated Mr. Evans' due process rights. At a minimum, Mr. Evans requests a hearing scheduled 30 days from the date of this filing to give Mr. Evans time to review additional discovery requested in this matter. Specifically, Mr. Evans has requested, simultaneous to the filing of this Motion, the full investigation file from CID to determine 1) why CID allowed German authorities to have primary jurisdiction over the case; 2) to show the full involvement of CID throughout the investigation; 3) to determine when CID was notified of Germany's decision to dismiss the charges; 4) to determine why CID waited until January, 2011 to request jurisdiction over the case; and 5) to determine what, if anything, CID did to further the case between October, 2010 and October, 2014.

Respectfully submitted,


KEVIN L. BUTLER
Federal Public Defender

**/s/Sabra M. Barnett**
Sabra M. Barnett
Assistant Federal Public Defender
Office of the Federal Public Defender
Northern District of Alabama
505 20th Street, North, Suite 1425
Birmingham, Alabama 35203
(205) 208-7170 Office
Sabra_Barnett@fd.org


**CERTIFICATE OF SERVICE**


I hereby certify that on February 4, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.


Respectfully submitted,


**/s/Sabra M. Barnett**