FILED
2015 Mar-12  PM 03:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ALABAMA
                          EASTERN DIVISION


   UNITED STATES OF AMERICA,    *
                     Plaintiff, *  1:14-cr-333-AKK-JEO-1
                                *  February 11, 2015
   vs.                          *  Birmingham, Alabama
                                *  2:02 p.m.
   RICK LEE EVANS,              *
                     Defendant. *
                   *****************************


                TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE JOHN E. OTT
                UNITED STATES MAGISTRATE JUDGE


          FOR THE UNITED STATES:

          MS. SARAH CHANG, ESQ.
          1400 New York Avenue NW
          Suite 600
          Washington, DC 20005
          202-353-4979

          MR. DANIEL FORTUNE, ESQ.
          U.S. ATTORNEY'S OFFICE
          1801 4th Avenue North
          Birmingham, AL 35203-2101


          FOR THE DEFENDANT:

          MS. SABRA M. BARNETT, ESQ.
          Assistant Federal Public Defender
          505 20th Street North
          Suite 1425
          Birmingham, AL 35203
          205-504-0693
```

```
1              MR. RICK L. BURGESS, ESQ.
               Assistant Federal Public Defender
2              Northern District of Alabama
               505 20th Street North, Ste. 1425
3              Birmingham, AL 35203
               205-504-1642
4
               MR. KEVIN L. BUTLER, ESQ.
5              Federal Public Defender
               Northern District of Alabama
6              505 20th Street North
               Suite 1425
7              Birmingham, AL 35203
               205-504-4440
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# P R O C E E D I N G S

THE COURT:  We are here in the matter of United States of America versus Rick Lee Evans, Case Number 1:14-cr-333-AKK.

14:02:54      This matter is before the Court on a number of motions that have been filed by the defendant.  And I thought we would start by going through and seeing exactly what we have here and what is ready for disposition at the present time.

14:03:12      First of all, with regard to the first motion for production of forensic interviews, it appears to me that that is Document Number 20.  It has been fully briefed by the parties.

Motion for bill of particulars -- for probable cause
14:03:30  hearing, Number 24, is also fully briefed and ready for disposition.

The first motion to dismiss, Number 23, appears to be fully briefed.

The second motion to dismiss, Number 30; Number 36,
14:03:48  which is the third motion to dismiss; 37, which is the fourth motion to dismiss; and 38, which is the fifth motion to dismiss and also a request for a bill of particulars -- those appear not to have been briefed yet by the United States.  I believe that's correct.

14:04:06      MS. CHANG:  That's correct, Your Honor.

1          THE COURT:  Okay.

2          MS. CHANG:  Well, actually, did you refer

3   to the last three?

4          THE COURT:  Yes.

14:04:12  5          MS. CHANG:  Yes, Your Honor.  Those have

6   not yet been briefed.

7          MS. BARNETT:  Your Honor, in terms of the

8   second motion to dismiss, which is the failure to prosecute,

9   we filed a motion.  They filed a response just yesterday.  In

14:04:28  10  our motion, we actually asked the Court for 30 days because

11  we requested some additional discovery, which the Government

12  has stated that if it exists, they will give us.  So we

13  would -- I know that you set that to be heard today, but we

14  would ask if we could --

14:04:42  15         THE COURT:  And I think I set it before

16  they filed their response, correct?

17         MS. BARNETT:  Correct.  And before we

18  filed all the additional motions.  So I was hoping we could

19  put that one on the next --

14:04:54  20         THE COURT:  Well, that was kind of where I

21  would like to start with you all.  What do all -- do you all

22  agree as to what you will be addressing today?

23         MS. CHANG:  Yes, Your Honor.  I just would

24  represent to the Court that perhaps 30 days would not be

14:05:10  25  enough since CID's file is located throughout different

1    jurisdictions, including foreign jurisdictions.  So 30 days

2    may not suffice for us to respond to their discovery request.

3                        THE COURT:  Any idea how long it would

4    take?

14:05:28  5               MS. CHANG:  Perhaps 60 days, Your Honor.

6                        THE COURT:  Okay.  You all right with

7    that?

8                        MS. BARNETT:  Yes, Your Honor.  We have no

9    objection.  And in fact, there's a couple of outstanding

14:05:38  10   discovery that may or may not take 30 days which they're

11   representing is going to take longer.  We would certainly not

12   be opposed.

13          Obviously, we would like to put on the record we

14   have a June trial date.  We may have to at some time ask that

14:05:56  15   that be moved back, depending on when we get all this

16   discovery and hear these motions.  I think it has been set

17   for a trial in June.

18                       MS. CHANG:  The United States is prepared

19   to go forward on the second motion to dismiss in terms of the

14:06:14  20   arguments laid out before the Court in time for today's

21   hearing.

22                       THE COURT:  But you want time to respond

23   after you see whether or not they give you the discovery --

24                       MS. BARNETT:  Yes, Your Honor.

14:06:26  25                       THE COURT:  -- on Number 2, second motion

1    to dismiss?

2                    MS. BARNETT:  Yes, Your Honor.

3                    THE COURT:  It seems like -- and I

4    apologize, Ms. Chang.  I'm Judge Ott, obviously.  It's good

14:06:34  5    to have you here, by the way.

6                    MS. CHANG:  Good to be here.  Thank you.

7                    THE COURT:  I don't have a problem holding

8    off on Number 2 because it seems like we're not going to be

9    able to deal with third, fourth, and fifth motions to dismiss

14:06:46  10    today unless you're ready to address them.  I would presume

11    you would like to brief them, as well?

12                    MS. CHANG:  We are prepared to orally

13    argue the motions.  The last three filed yesterday.  However,

14    if the Court would like further briefing, we're happy to do

14:07:00  15    that, as well.

16                    THE COURT:  I'm okay with that.  Mainly --

17    especially in light of what I'm hearing you pretty much are

18    in agreement about.  We're not going to get through today

19    anyway.  We're going to have to take the next two months to

14:07:14  20    see if the discovery comes in.  I hate to put those three off

21    that long.  Let's hold off on that and see.

22         For instance, if it's just a matter of legal

23    argument, then you can submit it on briefs.  That way you

24    both will have a chance -- my thought would be if I hear oral

14:07:36  25    arguments from you, in response, you're going to want time to

1    either file a response or you're going to argue.  And then

2    I'm going to say it is an awful lot for me to handle; why

3    don't you put it in writing.  So that seems the more logical

4    thing to do, provided we're in agreement that no further

14:07:50  5    hearing would be necessary on Motions Number 3, 4, and 5.

6    And I'm not asking you to commit to that.  But that would be

7    my only concern there.

8                 MS. BARNETT:  Your Honor, I would just

9    submit to the Court that we believe the CID files are also

14:08:06  10    pertinent to not only the failure-to-prosecute motion to

11    dismiss but also the lack-of-jurisdiction motion to dismiss,

12    which I believe is the fourth motion to dismiss.  So we

13    believe that that would be really relevant to both of those

14    motions before we feel like we can fully argue.

14:08:28  15                 THE COURT:  My next concern about that is,

16    Ms. Chang, do you really think we can get it in 60 days from

17    CID?  And I'm not asking your integrity.  I just used to work

18    for the United States.  I've dealt with CID.  And especially

19    this being an international case, this being as old as it is,

14:08:48  20    boy, that's a lot of moving parts.

21          I'd hate to say let's get it done in 60 days, then

22    give me a brief two weeks after that and then reply within a

23    week -- but if the materials are not there -- I'd just

24    wait -- we would have to get on the phone, reschedule

14:09:04  25    everything.

1      If you're pretty comfortable, I'll set those kind of

2 deadlines.

3                    MS. CHANG:  Your Honor, I can only

4 represent that that is -- 60 days is an optimistic hope on my

14:09:18  5 part.  Having dealt with CID before and on other cases, it is

6 not unusual for them to take a while since they do have many

7 different offices across the globe.

8                    THE COURT:  Does it help you if we put

9 them under a Court deadline?  For instance, the United States

14:09:36 10 is required to produce that material within 60 days?  That

11 gives you a little bit more leverage, maybe?

12      Seeing Mr. Fortune shaking his head no, that tells

13 me that what you're saying the Army CID will not listen to a

14 Court order, which in light of recent events with the United

14:10:02 15 States Government I've had in another case, we did two orders

16 they did not listen to until we filed an order for sanctions.

17 They got the records within a week.  It just is amazing to

18 me.

19      All right.  Let's give you 60 days to get the

14:10:16 20 records.  Let's see where we are.  And I'll put that in an

21 order for you.

22      It seems to me that if I ask the United States to

23 respond to their motions, then they get the records, they may

24 supplement their motion.  You're going to be briefing it

14:10:38 25 again.  Would you prefer that I not make you do that?

1            MS. CHANG:  To brief it again, Your Honor?

2            THE COURT:  Yeah.  In other words, to hold

3      off on a briefing schedule?  You're not going to get to trial

4      in June.  If you can't tell me the CID records are going to

14:10:52  5      be here in two months, there's no way we're going to get this

6      thing to trial in June.

7            MS. CHANG:  Your Honor, if the Court needs

8      briefing, we are fully prepared to brief the issue to the

9      extent that's necessary.

14:11:06 10            THE COURT:  I think I do need the

11      briefing.  I would appreciate it.  And it seems like to me

12      the prudent thing to do would be to wait until you've filed

13      your motion fully.  In other words, you look at the

14      records -- now, what happens -- I guess if they can't get

14:11:24 15      them in 60 days and they come back and say we need another 60

16      days, do you both agree -- let me ask the United States this.

17          Do you agree what they're seeking is material?

18                  MS. CHANG:  No, Your Honor.

19                  THE COURT:  So do we need to address that

14:11:42 20      first?  Because if I find it's totally irrelevant or

21      immaterial to what the issues are, then doesn't that moot

22      that point?

23                  MS. CHANG:  The Government's position at

24      this point, Your Honor, is that there was -- there is no

14:11:58 25      actual prejudice.  And from our knowledge of CID's

1   investigative process as well as the prosecution's

2   decision-making processes through the Department of Justice

3   as well as the United States attorney's office, the delay --

4   if there was one -- and, of course, there was a gap of time,

14:12:20   5   a time gap between the offense charged and the date of the

6   indictment -- was not prejudicial.  And is not grounds for

7   due process violation findings.

8              THE COURT:  Is your basis for asserting

9   that based upon the fact that the -- I believe it is the four

14:12:38   10   or five witnesses that are posited by the defense in Document

11   Number 30, Page 5, bottom there and going on to the next

12   page -- that those witnesses are not material, do not present

13   any type of favorable or exculpatory testimony?

14              MS. CHANG:  Your Honor, we would question

14:13:02   15   the relevance of, I believe it's, Ms. Otto-Lotz's opinion as

16   to the credibility of the minor victim in this case.  As to

17   how she could come to court and testify as to whether or not

18   this witness is credible, I don't know how that could survive

19   *Daubert*.  And if they would like an expert's opinion about

14:13:32   20   the integrity of the forensic interview process, then they

21   are free to do so in the United States.  Many of the child

22   advocacy centers have child psychologists on call precisely

23   for this reason.

24              THE COURT:  Okay.  What about the other

14:13:50   25   three or four people that are listed there by initials?

1            MS. CHANG:  Yes.  The KOK Bernhard Griebel

2    I believe was one of the main investigators on the case in

3    Germany for the child pornography possession charge.  And I

4    believe he or another person -- I don't know if it would be

14:14:14  5    an agent or an investigator who had a chance to examine the

6    forensic evidence -- would also be called by the Government.

7    And we would need to enter an MLAT of some kind to have the

8    person flown to the United States to testify.

9            In terms of whether or not it's material to the

14:14:38  10    defendant's case, I don't -- it actually would be inculpatory

11    evidence.  And possibly -- the Government would argue it's

12    inextricably intertwined with the events of this allegation,

13    these charges.

14            MS. BARNETT:  Do you want me to address

14:14:56  15    these one by one?

16            THE COURT:  That's why I'm trying to get a

17    view.

18            MS. BARNETT:  They didn't brief this in

19    their brief at all.  They didn't address my issue of

14:15:06  20    prejudice at all in their brief.  They just said --

21            THE COURT:  I'm not satisfied with that.

22    I think you need to deal with the prejudice, because I'm not

23    going to jump over that hurdle either.

24            MS. BARNETT:  I just didn't know if I

14:15:20  25    could respond or you wanted me to wait until --

                        THE COURT:  Well, that's what I'm trying
to decide.  In other words, I only want to do this one time.
                        MS. BARNETT:  Right.
                        THE COURT:  In other words, I don't want
14:15:28  to have to have a hearing on this and then, for instance, 60
days from now, you come back and say, we've looked at the CID
file.  Do you remember those four or five names we mentioned
before?  We now have six or eight.  We need to go back.  And
also those four or five we addressed before, we now have more
14:15:46  information concerning them.  That seems like a very
inefficient way to address the issues.  But I'm working in a
black box, as are you, because you don't know what's there.
                        And are we saying that the CID file in this case we
don't know where it is right now?
14:16:10                        MS. CHANG:  Well, it's just many component
parts.  And we've done a -- as robust a discovery process as
possible in terms of I personally asked for all discoverable
material.  What they sent to me I can only assume is it.  But
in light of defense requests for additional material, I'm
14:16:32  doing my best to fulfill that request.
                        THE COURT:  Do you have any reason to
think that there is other material out there?  In other
words, did they hit on something that you now say, okay.  I
see what you're saying or -- in other words, you did a
14:16:46  collective send me everything, United States Army CID, that

1    you have wherever it's located around the globe?

2                    MS. CHANG:  Absolutely, Your Honor.  And

3    perhaps the only thing that I'm not privy to is perhaps the

4    internal records of, you know, agents logging in to type in

14:17:08  5    notes.  I mean, I'm sure they have electronic records of

6    that.  But that's not something that the discovery process

7    would allow disclosure anyway.

8            And I believe on the law, Your Honor, in the *Lovasco*

9    and *Marion*, which are Supreme Court cases, prejudice -- even

14:17:24  10    if you do show actual prejudice, which I don't think has been

11    established here yet, that is not sufficient.  You actually

12    need to show intentional action by the Government to gain

13    tactical advantage.

14                    THE COURT:  Certainly in the 11th Circuit.

14:17:42  15                    MS. BARNETT:  And Your Honor, we would

16    argue that what Ms. Chang just referred to in terms of the

17    internal decision making by CID, considering we see some

18    correspondence in September, October, 2010 and then we see

19    nothing in the discovery until August, 2014 when they

14:18:02  20    interview the minor -- those decisions made during those

21    three-and-a-half, four years I'm concerned were tactical

22    decisions.

23            For instance, when they were told in September -- I

24    think they were probably told in May, 2010.  And I don't know

14:18:22  25    because I've asked for that specifically out of the CID file.

1    But there is a September, 2010 letter, saying, we're done.

2    We're not -- we are dismissing this case.  Because Germany

3    actually was prosecuting this case, and then in September,

4    2010, they said, we are dismissing this case.

14:18:38  5                    THE COURT:  That's Germany?

6                    MS. BARNETT:  That's Germany.  Then -- but

7    at that point, Mr. Evans was still under the uniform military

8    code.  And yet, CID waits until September, October, November,

9    December when he's released from the reserves.  They don't

14:18:58 10   request jurisdiction until January, 2011.

11            Then I asked on Saturday -- I sent an email to

12   Ms. Hutzell that just said, hey.  Listen.  I know you're

13   trying to get the CID file.  I would like to see the release

14   of jurisdiction.  Can I get that on Monday?  They don't have

14:19:14 15   it.

16            So I don't even know if jurisdiction was actually

17   technically released to the United States.

18                    THE COURT:  From the military?

19                    MS. BARNETT:  From Germany.

14:19:22 20                   THE COURT:  From Germany.

21                    MS. BARNETT:  Which I believe had to have

22   been done under the Statute Of Forces Agreement.  And then I

23   don't know why they waited from -- the last piece of

24   investigation I see is October, 2010.  What happened between

14:19:36 25   that and October 2014 when they indicted Mr. Evans is

1    absolutely material to our showing tactical advantage.

2                    THE COURT:  But let's just say -- it's not

3    enough, I don't think, to show a tactical advantage.  Don't

4    they have to have an improper motive?  Am I right?

14:19:58 5                    MS. CHANG:  Delay itself is not a tactical

6    advantage, Your Honor.  There needs to be an intentional act

7    for particular tactical advantage for trial.

8                    THE COURT:  And I guess -- okay.  Then --

9    and I appreciate what you are saying.

14:20:14 10          That would take me back to the question for you.

11    When you got the file such as the materials Ms. Barnett is

12    asking about; that is, the release of jurisdiction by

13    Germany; the hard copy or the electronic version of the file

14    as it existed in 2010 -- and I realize there may be some

14:20:36 15    strings out there to various individual agents.  I'm not

16    talking about that.  But there ought to be a single case file

17    somewhere.  And that's what you've got?

18                    MS. CHANG:  Correct, Your Honor.

19                    THE COURT:  Does it --

14:20:48 20                    MS. CHANG:  And that's what the defendant

21    has, as well.

22                    THE COURT:  But they don't have -- she's

23    indicating, for instance, they don't have the release of

24    jurisdiction -- and I'm assuming there is such a document --

14:20:58 25    executed by Germany, provided to the CID.  Is there such a

1    document?

2                    MS. CHANG:  Not that I'm aware of, Your

3    Honor.  All I have is a document written by German

4    prosecution office, discussing their reasons for dismissing

14:21:14  5    the sexual abuse allegations.  And that's, to me, release of

6    jurisdiction.

7                    THE COURT:  Can I go back to you, then,

8    Ms. Barnett.  Is --

9                    MS. BARNETT:  That can't be, because they

14:21:28  10   asked in January, 2011 for official release.  So after the

11   September 27, 2010 letter, they then request a release in

12   January, 2011.

13                   THE COURT:  So let me ask you this:

14   They're saying they never got a release or don't have a

14:21:38  15   release.  They apparently don't know whether there is a

16   release.  If there is no release, what does that do to the

17   status of this case?

18                   MS. BARNETT:  I think then our motion on

19   lack of jurisdiction comes into play here, Your Honor.

14:21:50  20                   THE COURT:  Which is Number 4.

21                   MS. BARNETT:  Correct, Your Honor.

22                   THE COURT:  Okay.  So that's why you were

23   saying before they were intermingled?

24                   MS. BARNETT:  Yes, Your Honor.

14:21:58  25                   THE COURT:  Okay.  Now I guess, therefore,

1    it is somewhat in the interest of the United States to see if

2    you can better gather all of this file to see if there was a

3    release.

4         Now, let me ask you this:  Do you agree if Germany

14:22:16  5    never released that there is a problem with jurisdiction?

6              MS. CHANG:  No, Your Honor.  Maybe I'm not

7    understanding the issues correctly.  But from my reading of

8    the --

9              THE COURT:  Maybe I'm not, to your

14:22:26 10    defense.  So please educate me.

11              MS. CHANG:  From my reading of the fourth

12    motion to dismiss, based on lack of jurisdiction, that motion

13    questions the constitutionality of the Military

14    Extraterritorial Jurisdiction Act based on the enumerated

14:22:46 15    powers given to Congress by the constitution.  I don't know

16    if I'm missing something here.

17              MS. BARNETT:  I think the third section of

18    that brief starts questioning whether there was even

19    jurisdiction based on the interplay between Germany and the

14:22:58 20    military and the United States.

21              THE COURT:  So that's the third part of

22    that.

23              MS. BARNETT:  I believe so, Your Honor.  I

24    don't actually have that in front of me.

14:23:08 25              MS. CHANG:  Your Honor, that is an

1    entirely different issue.  When it comes to discussing the

2    role of Department of Justice versus the military, we believe

3    that would be another brief all together about -- well, our

4    position would be that the Department of Justice, while part

14:23:28  5    of the Government, does not work in concert with the

6    military.

7           Yes; there are two different statutes under which,

8    at some point for a short amount of time, I believe,

9    Mr. Evans was subject to military law as well as civilian

14:23:42 10    law.  However, there were SOFA, Statute Of Forces Agreement,

11    giving Germany exclusive jurisdiction over this particular

12    time since it occurred on German soil.

13           And MEJA actually prohibits prosecution from going

14    forward in the United States if a foreign jurisdiction is

14:24:06 15    prosecuting or has prosecuted for the particular -- the same

16    offense.

17               THE COURT:  So if I understand correctly,

18    as it relates to this case, these offenses, that exclusive

19    jurisdiction was given to Germany?

14:24:22 20               MS. CHANG:  Yes, Your Honor.

21               THE COURT:  And then which would mean if

22    we give them exclusive jurisdiction, then we're giving up

23    jurisdiction?

24               MS. CHANG:  As in they have the first

14:24:32 25    opportunity to prosecute for the crime which they see fit for

1      the conduct that occurred on their soil.  And they did

2      dismiss the sexual abuse allegation.  What they did prosecute

3      Mr. Evans for was the possession of child pornography.  And

4      then he was found guilty of that and then fined.  Now, what

14:24:56  5      happened with the sexual abuse allegations has been

6      documented and turned over to the defense.

7                      THE COURT:  Can I ask you, then, if once

8      jurisdiction, as it appears you have stated, was given

9      exclusively to Germany, at least until they made a decision

14:25:12  10     not to go forward on the charge, is there any requirement

11     under the Act or the statutes that Germany formally release

12     jurisdiction?

13                      MS. CHANG:  No, Your Honor.  That's not

14     written into the statute.  I've not seen any caselaw that has

14:25:30  15     that requirement.

16                      THE COURT:  So then, Ms. Barnett, why do

17     we need what you are asking for?

18                      MS. BARNETT:  Well, again, Your Honor, I'm

19     still trying -- this also goes to our request for a probable

14:25:40  20     cause hearing as to whether they have jurisdiction over

21     Mr. Evans, because January, 2011, they made a request

22     specifically under the Statute Of Forces Agreement for

23     release of jurisdiction.  So and now they're saying that,

24     well, they didn't need a release of jurisdiction?  So I need

14:25:58  25     to explore this more.

1           I mean, this just has happened in the last 48 hours.

2    I mean, I just found out late yesterday that they don't have

3    this release.

4                THE COURT:  Sure.  Okay.

14:26:10  5                MS. BARNETT:  I thought this was a given,

6    Your Honor, when I emailed the request on Saturday.

7                THE COURT:  You sure haven't been around

8    me very long, have you?  Nothing around me is a given

9    anymore.

14:26:20  10                MS. BARNETT:  I just thought surely they

11   have this if they've given me the request for the release.

12          So I need to figure out what to do with this also.

13                THE COURT:  All right.  It seems like to

14   me I think both of you and I need to regroup as far as Number

14:26:36  15   2 -- motion to dismiss Number 2, 3, 4, and 5.  Particularly

16   as to the Three, Four, and Five, because those haven't been

17   briefed, I think, at all.  So I'll let you regroup as to

18   those.  And I'm just sorry if y'all have to come back.  I

19   think you're going to be back anyway, regardless.

14:26:58  20          And the next question is, then -- I'll give you 60

21   days to get the CID records.

22          Ms. Barnett, do you think that if they don't have

23   the records in 60 days -- are we not right back to where we

24   are now?

14:27:16  25                MS. BARNETT:  Yes, Your Honor.  So maybe

1    we just need to give you a status update in 45 days or

2    something?

3                    MR. BURGESS:  Well, would a motion to

4    compel that the Court enters an order --

14:27:32  5                    THE COURT:  Mr. Fortune says it doesn't

6    matter, from his expression.

7                    MR. BURGESS:  Well, but it would put us

8    that far ahead in 60 days where -- I'm not saying they would

9    respond to it in 60 days.  But at least at the end of that 60

14:27:46 10   days, if they hadn't, then you might be in a position to

11   enter the order that you talked about earlier to speed things

12   up.

13                    MR. FORTUNE:  Your Honor, the reason I was

14   shaking my head in the sense of -- in addition to us not

14:28:02 15   thinking it's material, the reason I guess we would ask that

16   there not be any sort of order entered in the sense of

17   compelling us to disclose to defense counsel is because we

18   don't -- we don't know and we definitely don't think that

19   there is going to be anything that we get that we are going

14:28:24 20   to have to turn over in the first place.

21            What we are doing, we have given them and will

22   continue to give them access to what we think CID has given

23   us in the sense of the complete German file as well as any

24   and all of their investigative file.  But we are doing

14:28:38 25   additional requests.  But -- and that's our concern, though,

in the sense of an order jumps the first hurdle of precluding us from even being able to make the determination as to whether those things are discoverable.

THE COURT:  No.  I'm not going to take that -- what I would say is they are produced within 60 days to the United States Government, you all, for review.  I'm not saying produced to me.  I'm just saying if you're -- if you send an electronic request, we would like you to look at all the records you've got to see if you have anything dealing with X, Y, and Z, most likely, that's going to go into someone's basket for later.

You get a Court order that says the United States Government has been required to produce this within 60 days and/or to show cause if they can't do that within 60 days, that might get someone -- more likely get more attention.

What you're saying is not so much about sending it, reviewing it; you just don't think there's going to be anything there?

MR. FORTUNE:  Correct, Your Honor.

THE COURT:  So the Government's best judgment is whatever they've got now, which, as I understand it, pretty much they've made available to you -- isn't that correct, Ms. Barnett?  Everything -- let me ask them.

Are you holding back materials from them?

MS. CHANG:  No, Your Honor.

1                    THE COURT:  Okay.  So it's a true, open

2     file?

3                    MS. CHANG:  Well, I wouldn't say true,

4     open file since my notes and --

14:30:10  5                    THE COURT:  Let me rephrase that.  It's

6     either -- here's my definition.  We're not playing games.

7     It's just are they -- do they have access to the entire CID

8     file that you have?

9                    MS. CHANG:  Yes.  I literally scanned it

14:30:26 10    myself.  A stack of papers yea high.

11                    THE COURT:  So as far as you're concerned,

12    everything you get, as the prosecutor, you have given them

13    access to?

14                    MS. CHANG:  Yes.  In terms of what they're

14:30:38 15    most interested in right now, which is a chronology of

16    investigative steps, Ms. Barnett seems to be very well read

17    on what they did during that time period.  And she has that

18    information available to her.

19                    THE COURT:  Okay.  Did you want to say

14:30:52 20    something, Ms. Barnett?

21                    MS. BARNETT:  No, Your Honor.

22                    THE COURT:  All right.  Let's go back,

23    then, to the earlier motions.

24                    Number 20, which is the motion to compel production

14:31:04 25    of the forensic interviews.  And let me make one comment.  I

1  think to the extent everything has been briefed already by

2  the parties, I think they were well briefed, and I do

3  appreciate that.

4          Now, with regard to the forensic interviews, it

14:31:26  5  looks like to me the Government has some concerns both for

6  the individual, the child privacy concerns, general

7  production concerns, and I guess relevancy concerns with

8  regard to the review by the former forensic person,

9  Otto-Lotz, is it, L-O-T-Z -- I believe is her name.

14:31:54  10  Otto-Lotz.  And then, of course, that's the Government's

11  side.  Is that, in essence, correct, Ms. Chang?

12          MS. CHANG:  Yes, Your Honor.  In terms of

13  the motion to compel, I believe the defendant was moving to

14  compel the production of the two recorded forensic interviews

14:32:14  15  of the minor child.

16          THE COURT:  Correct.

17          MS. CHANG:  And our opposition to that

18  motion, Your Honor, is based mainly on the fact that to give

19  the defendant full, unfettered access to images of a child

14:32:30  20  that he is alleged to have sexually abused, describing in

21  great detail the acts of sexual abuse perpetrated or

22  allegedly perpetrated by the defendant, would be a great risk

23  of re-traumatizing the child as well as a great risk to her

24  privacy interests.  And we would oppose the motion as best we

14:32:56  25  could.

1                    THE COURT:  All right.  Ms. Barnett?

2                    MS. BARNETT:  Your Honor, we're not asking

3        for unfettered access for Mr. Evans.  We're asking for access

4        for his defense team, including anybody that we choose to

14:33:10  5        hire.  Not to challenge the veracity but to challenge the

6        integrity.  And we believe that we, as the defense team, are

7        entitled to look at that video as many times as we need; to

8        make our own exhibits from it, obviously protecting her name;

9        to do as much analyzing and examining as possible.

14:33:32  10            We are certainly willing to come into any protective

11        order that would prevent us from leaving a copy for

12        Mr. Evans.  We understand what their concern is.  And we're

13        willing to go into a protective order that does not allow him

14        to keep a copy and give him unfettered -- obviously, he has a

14:33:54  15        right to see it.  He's the defendant.  But that is something

16        that we can certainly show him.  But we need the copies to

17        prepare the defense.

18            I mean, I've briefed all this.  But you know,

19        they're asking for attorney-client privilege.  Who I'm

14:34:08  20        hiring, how many times that person wants to see it.

21                    THE COURT:  Right.  And I get that.  Yes.

22                    MS. CHANG:  Oh, Your Honor, there is one

23        fact that perhaps was not -- it was not briefed because it

24        happened recently.

14:34:20  25            The defense team has now been given not just

summaries of the interviews, written summaries, but also full
audio records of the recordings.  They just don't have the
image.  And that they've been given full access to at the
U.S. attorney's office at any time they'd like.  We've even
14:34:42  offered to allow them to ship -- we would ship it to any
United States attorney's office most convenient for whoever
they hire as an expert.

THE COURT:  The only problem with that is
if you do that or some variation thereof, if a person comes
14:34:58  into the U.S. attorney's office, you're identifying the
expert.

Now, I also read their motion -- Ms. Barnett, you're
not even saying you're going to do an expert.  You just
say -- and this is on Page 2 of Document Number 20 -- so that
14:35:16  you can be fully aware of and thoroughly analyze the alleged
victim's version of the events and in order to prepare for
trial.

It seems like to me that's not allowed under Rule
16, typically.  In other words, the witness -- unless it's
14:35:36  exculpatory, unless it's favorable, then you get it either
pursuant to 3500, as *Jencks,* or if it's federally
exculpatory, under our local rule, certainly within a week of
trial.

Here's where the difficulty comes in for me.  I get
14:35:52  what the Government is saying.  I am very cognizant of that,

1    and I am very receptive to that.  I think, though, the

2    defense, to adequately prepare -- if we don't come up with a

3    formula to make this work and let's say we stick to our rigid

4    local rule, one week beforehand, you have to give this up, as

14:36:14  5    you would *Jencks* material and others; then they say, Judge,

6    in light of that, now we need our forensic expert to look at

7    it.  That forensic expert looks at it the week before trial.

8    Does it immediately.  They want to testify.  Now you have to

9    do Rule 16 expert exchanges.  And we're in trial.  We're

14:36:28  10    putting off trial.  That, to me, just does not work in this

11    scenario.

12         Forget the part about identifying your consultant or

13    your work product.  I mean, let's just keep it really simple.

14    I think at that point, if I were you, I would have someone,

14:36:46  15    an expert -- if that's the first time they're going to give

16    me that and you put the Court and the Government on notice of

17    that and one week before trial, you could move for a

18    continuance saying, Judge, this is the first time we've had

19    an opportunity to see it.  We need a week extra or two weeks

14:37:02  20    or whatever to let our forensic expert look at it to see if

21    there are things.  Then we need a *Daubert* hearing to see

22    whether that person is qualified to testify at trial to these

23    matters.  You're going to want to brief it.  We have a jury

24    coming in in five days.  We've just blown a trial out of the

14:37:18  25    water.  That's my bigger problem with this.

1          Now, you're going to sit there and say, well, that

2     person should never be allowed to testify.  I'm not sure I'm

3     willing to go there because if the person is qualified as a

4     forensic expert, depending on what it might be, the judge

14:37:34   5     might allow it.  I know I would be certainly inclined to hold

6     a hearing on that.

7          All that to say, I'd rather you all come up with a

8     workable plan to avoid that.

9          And let me ask another question to the United

14:37:52  10     States.  Would you not agree that, at some point, the

11     defendant would have a right, either under due process, fair

12     trial, or assistance of counsel, to see the video?

13                    MS. CHANG:  Yes, Your Honor.  Access?

14                    THE COURT:  Yes.  Access.

14:38:10  15                    MS. CHANG:  Yes.

16                    THE COURT:  And your thinking is it would

17     be somewhere either a week before trial; is that right?

18                    MS. CHANG:  Yes.  As *Jencks* material.

19     Absolutely.

14:38:22  20          I cannot emphasize enough, Your Honor, that since

21     December 8th, 2014, defense -- the entire defense team has

22     had full access to the videos at the U.S. attorney's office.

23     There's nothing preventing them from bringing the defendant

24     to the office, as well, under marshal custody.  This has been

14:38:42  25     ongoing.  And we have not prevented them from coming to the

1   office to have full access.

2                    THE COURT:  Right.  And I agree with you.

3   That's not a problem.  I compliment you for doing that.  It

4   has made this a little bit easier.  Now, they haven't

14:38:56   5   executed on that, which I think then takes care of the first

6   part of it.

7            Then the other question is the consultant.  Is, for

8   instance, depending on who the consultant is -- my thinking

9   is would the Government have a problem -- what about this:

14:39:28  10   If they decide to use -- the problem is if you decide to use

11   a consultant, that goes to -- you know, eventually we'll have

12   a consultant look at it.  That's one thing.  That's a matter

13   of trial strategy.

14            See, I have a problem with that.  If they come to

14:39:44  15   you and say we want the tapes or we want X to look at it, you

16   now are on notice that they've got -- are going to possibly

17   use an expert.  They may decide not to.  Then if you know

18   they're doing that, you may decide to use your own.  I have

19   an attorney-client problem with that or a work-product

14:40:04  20   problem or both with that.

21                    MS. CHANG:  Your Honor, I'm no expert in

22   expert disclosures, but I did just finish a trial where

23   forensic experts were part of the Government's witnesses as

24   well as defendant's witnesses.  And expert disclosures --

14:40:22  25   expert notices as well as attachments with their CVs,

1      resumes, as well as a brief letter, outlining what they would

2      be testifying to is required under the rules of procedure.

3                    THE COURT:  Believe me.  I get Rule 16.

4      Yes.  I understand what the rules require.

14:40:48  5          The problem is what you're saying is we want to hold

6      on to this.  If they want to look at it, they can come look

7      at it.  Okay.  They come walking into your shop, as you're

8      offering to let them to.  And Ms. Barnett brings an

9      unidentified person you don't know.  He's their expert.  What

14:41:06 10     if somebody in the office knows him and says, Sabra just

11     walked in here with an expert in the area of forensics.

12                    MS. BARNETT:  Well, Your Honor, they're

13     also obligated to sign in, show their driver's license, get a

14     picture.

14:41:18 15                    THE COURT:  Can we take this for granted

16     here?  One, I'm a former assistant U.S. attorney.  I did this

17     for 15 years.  Number 2, I know the operation of the U.S.

18     attorney's office.  I know you have to sign in.  I know all

19     that.  That's my concern, y'all.  This is not workable.

14:41:32 20          If you want and give it to the Court, we'll keep

21     custody of it and only release it to their expert if they

22     file a notice.  And it would be a very strict order.  From

23     the clerk of the Court, the expert or Ms. Barnett picks it

24     up.  Goes to him.  He brings it back.  We'd have to talk

14:41:54 25     about copying and some things like that.  But at least then I

1    think it preserves your concerns over trial strategy.  It

2    allows you to protect the interest of the defendant -- of the

3    victim.  Excuse me.

4            Mr. Butler?

14:42:10  5            MR. BUTLER:  Your Honor, just from a

6    policy standpoint, speaking for the district, this is a

7    slippery slope.

8            I use another example.  I don't mean to make light

9    of the allegations against the victim.  There's a bank

14:42:22  10   robbery, which there is a videotape of the client coming out

11   of the bank.  Government says, for whatever reason, we don't

12   want to turn that over.  You come over to our office and look

13   at it whenever you need to see it.  We now have to track back

14   and forth for videotapes, photographs because they just don't

14:42:36  15   like to turn over.  There's no law cited.  They just don't

16   want to give it to us.

17           The fact remains, Your Honor, I think this is

18   clearly a violation of Rule 16(e), but even that aside, from

19   a policy standpoint, if the Government now starts to take the

14:42:52  20   position in Case X, Y, Z, that, you know, we don't have to

21   turn it over anymore; we've got this precedent in the Evans

22   case, this could become problematic.

23           THE COURT:  And I understand the slippery

24   slope you're talking about.  Except this is not evidence the

14:43:12  25   Government intends to use; whereas, in your scenario, a bank

1    robbery video, a bank robbery photograph --

2                        MR. BUTLER:  Rule 16(e) is not just

3    evidence the Government intends to use.  It's material for

4    the defense.

14:43:26  5                        THE COURT:  Well, I'm getting there.

6    That's the only way I see this as being disclosable.  I think

7    we all agree that if it's got to be 16 --

8                        MS. BARNETT:  Your Honor, if I may add

9    also, we believe that these are exculpatory.  I think that

14:43:44  10   what we did brief that there is law on is that inconsistent

11   statements are *Brady* material.  And there are inconsistent

12   statements.

13          So we have all these issues with our consultant.

14   Then we have our own issues with having to prepare these as

14:44:00  15   exhibits for trial because we believe these are exculpatory.

16                        THE COURT:  Yeah.  And this gets back to

17   the local rule, which whether it's impeachment or

18   exculpatory, let's not -- keeping in mind, I've not seen the

19   video.  All I've gotten in front of me is the briefs.  And it

14:44:18  20   seems like there has got to be a smarter, for lack of a

21   better word, way to approach this than we're doing.

22          For instance, I am not going to give the defendant a

23   copy of it for his own use.  Not going to happen.  Not what

24   you're asking for.  The Government -- and I don't think

14:44:32  25   you're asking for this -- is not saying we're not going to

1    give it up ever.  We're somewhere over here on both sides of

2    extremes.  We need to bring it back more towards the middle

3    where you can come up with some procedure that, Number 1,

4    protects the victim in this case; Number 2, affords you the

14:44:50  5    opportunity to look at, review, and have your expert review

6    it to see whether or not you want to use an expert at trial.

7    That's what I'm going for.

8                    MS. BARNETT:  Your Honor, what we would

9    like is an order, saying that the defense counsel gets a copy

14:45:06  10   of it; that we may make a copy of it for a consultant; that

11   they have to return the copy when they're done; that we will

12   return the -- I mean, we're grown adults, Your Honor.  We are

13   not planning on doing anything with this that we're not

14   supposed to do.  But we would like the Government to trust us

14:45:26  15   that we need this for our defense.  And I think that they're

16   saying they are never going to give it up.

17                   MR. BUTLER:  Proposal, Your Honor.  We

18   have a safe at our office.  I, as the federal defender, am

19   willing to sign a document, stating that I received it and

14:45:40  20   I'm placing it in the safe.  I will create a log whenever I

21   take it out of the safe for preparation of the defense, when

22   it's done.  It will not be put on our system; it will not be

23   copied in any way.  The CD will be put back in the safe.  I

24   will sign the log.  It will stay in our safe.  If the

14:45:54  25   Government requests a surprise inspection to see that it's in

1    the safe, we'll welcome them into our office to see it.  I'll

2    sign out for the consultant.

3                    THE COURT:  The consultant would get it,

4    bring it -- I'm sorry.  Mr. Fortune?  Ms. Chang?

14:46:16  5                    MR. FORTUNE:  Your Honor, this is a

6    Government witness statement.  And I believe it's -- the

7    Government's position on what Rule 16 allows when it comes to

8    Government -- Rule 16 is sufficiently briefed.  But what I

9    would just point out to the Court, Your Honor, we have given

14:46:28  10   the complete audio of these interviews.  They have the

11   complete interview.  They have summaries.  But they also have

12   the complete audio.

13        What we did was literally gave them the audio minus

14   the images of the kid in the room, you know, or whatever.

14:46:48  15   And we believe that that has even -- that even goes above and

16   beyond what Rule 16, what *Jencks* and even what *Brady* would

17   require.  Because they have the actual statements.  They have

18   the questions and the answers of what was asked in these

19   interviews that an expert or any consultant that they have

14:47:08  20   can listen to, hear whether those questions are -- you

21   know --

22                    THE COURT:  Can I --

23                    MS. BARNETT:  My consultant doesn't --

24                    THE COURT:  Wait a minute.  One at a time.

14:47:18  25   Ms. Barnett, let him finish.

1          MR. FORTUNE:  And, Your Honor, if somehow

2    they were to file with the Court, I guess ex parte, some

3    affidavit from some forensic interviewer who is indicating

4    that they need to see the video, Your Honor, there's two

14:47:38  5    solutions that can happen.  And the Government is not opposed

6    to the Court's suggestion in the sense of if there is some

7    consultant out there they have that has provided an affidavit

8    to the Court that says they need to see the video and that

9    listening to the interview is not enough but actually seeing

14:48:00 10    the child is sufficient or whatever, but --

11          MS. BARNETT:  I can make that

12    representation.

13          THE COURT:  Hold on.  Ms. Barnett, let him

14    finish.

14:48:10 15          MR. FORTUNE:  We can have basically

16    similar in the sense of a taint team in place in the sense of

17    we can have them meet.  Defense counsel, defendant, and

18    anyone else they want to bring over to the U.S. attorney's

19    office can meet someone who is not part of the investigative

14:48:28 20    team, will not disclose.  And we can actually even make

21    arrangements in the sense of where they don't have to come up

22    through the whole building and identify themselves, you know,

23    that type of thing.  There are those type of measures that

24    can be in place.

14:48:40 25          I would just argue, Your Honor, that it's not gotten

1    to that level in the sense of we've already given way more

2    than what is required under Rule 16.  It is the Government's

3    position.

4                    THE COURT:  Do you not -- the only

14:49:00  5    disagreement I have with you, Mr. Fortune -- and I appreciate

6    your suggesting that -- is under Capital E, which is

7    documents and objects, it is the first line.  Little I.  The

8    item is material to preparing the defense.

9                    MS. CHANG:  Your Honor, if you read a

14:49:18  10    little further, Subsection 2 of G or just Subsection 2

11    towards the end, information not subject to disclosure,

12    Subsection E is excluded from that provision.

13                    MS. BARNETT:  Your Honor, we would argue

14    that that has to do with 302.

14:49:38  15                    MS. CHANG:  Continuing to say that:  Nor

16    does this rule offer as discovery, or inspection, statements

17    made by prospective Government witnesses --

18                    THE COURT:  Let me ask you this.

19                    MS. CHANG:  -- except as provided --

14:49:50  20                    MR. BUTLER:  If the Government is willing

21    to stipulate that the girl is not going to testify, we might

22    withdraw the request.

23                    THE COURT:  I don't see how they could do

24    that in light of what the case --

14:50:04  25                    MR. FORTUNE:  Your Honor, because she

1    is -- we've actually told them that she is going to testify.

2    And because she is going to testify, that actually goes to

3    how in the world even the video/audio are material in the

4    sense of how they come into evidence, how they are played,

14:50:22  5    period.  But we're still giving them access to the video in

6    its entirety.  But we've given them their own copies of the

7    complete audio.

8                      THE COURT:  Right.  Now --

9                      MR. FORTUNE:  As well as summary.

14:50:36  10                      THE COURT:  Ms. Barnett is dying to tell

11    us she can make the representation to all of us that just the

12    audio is not good enough.  I'm not a forensic psychologist.

13    I'm not a forensic expert.  But I can tell you, based upon my

14    experience both as a judge and a prosecutor, audio alone is

14:50:56  15    insufficient.  If you want them to get an affidavit from the

16    expert -- any expert to that effect, that's fine.  My common

17    sense, my judgment is that's not good enough.

18          Honestly, I am very comfortable with Mr. -- let me

19    just put it this way so I don't just put it on Mr. Butler --

14:51:16  20    the federal defender office's proposal that it's kept in a

21    safe; a custodian is designated, whether it's Mr. Butler or

22    it's Ms. Barnett, the Court would be satisfied with either of

23    those; it goes to an expert; it comes back.

24          So the Government understands, we would not be

14:51:36  25    here -- we've never done this in my years that I can

1 remember.  It's just the nature of this case, the nature of

2 the allegations that they have put forward, which I think are

3 very well done by both sides, that I'm trying to come up with

4 a workable solution.  And I do not see it as a precedent -- I

14:51:56 5 would dare someone to put this back in front of me and say,

6 well, Judge, you did this in this case; you should do it in

7 mine.  It's just different.

8      MR. FORTUNE:  Your Honor, the concern is

9 if we give this in discovery, regardless of what the ultimate

14:52:14 10 orders are -- and we understand that the federal public

11 defender will abide by whatever the order is.  But then what

12 occurs when the defendant either fires the FPD and switches?

13 And then also what happens when he files a motion for a

14 complete copy of the file?  And I'm sure the Court is

14:52:38 15 familiar with those motions.

16      THE COURT:  No.  No.  Oh, yes.  Quite.

17 The video, when the case is final, is returned to the United

18 States, Number 1.  Number 2 is I would put in any protective

19 order no copies are made and certainly no copies to be

14:52:54 20 provided to the defendant at any point, at any time, absent

21 very specific order of the Court.  There's no way.  That's

22 not going to happen.

23    Your point is well taken.  But I think it's

24 something we can protect.

14:53:10 25      MS. BARNETT:  Thank you.

1          MR. FORTUNE:  Your Honor, this is -- but
2     in regards to defense counsel's talking about precedent, to
3     me, this is actually setting precedent where the Court is
4     giving them witness statements -- a witness' statement well
14:53:24  5     in advance, even though rules --
6          THE COURT:  But you've already done that,
7     Mr. Fortune.  In other words -- and please understand.  I'm
8     crediting the United States Government for what they're doing
9     in this case.  I just think this case is exceptional.  And
14:53:38 10     because of the nature of this particular item of what we're
11     dealing with, I think it needs to be treated a little bit
12     differently.  I don't want to discourage you from making
13     early disclosure in your other cases.  I think that has been
14     great that y'all are doing that.
14:53:56 15          Here's my concern, too.  Let's again just go
16     practical on this.  You disclose it one week before trial.
17     Then they look at it and go and file -- which I would,
18     arguably -- a motion for an expert review of it and explain
19     why they had to wait until the last week before trial.  Do
14:54:14 20     you really want to go upstairs to Judge Kallon and say,
21     Judge, we don't think they should get it?  And let's say he
22     says, well, I think they should.  And now you want me to call
23     off my jury?  Do you really want to do that?
24          MR. FORTUNE:  Your Honor, they've already
14:54:30 25     watched the videos.

1                    THE COURT:  Okay.

2                    MR. FORTUNE:  And I guess my concern would

3     be or my thoughts are in the sense of what is the -- in all

4     of our cases when we give witness statements, they could

14:54:48  5     conceivably say -- when we give *Jencks*, they can conceivably

6     argue, we need to get an expert to do what?  To come in and

7     to listen to the prior statements and listen to what she

8     testifies to now and make some sort of I want to testify to

9     the credibility of that witness.  We're -- really all we're

14:55:08  10     talking about is giving them an opportunity to prepare to

11     cross-examine a child witness.

12                    THE COURT:  How old is this person now?

13     That's one thing that I haven't discerned.

14                    MR. FORTUNE:  11.

14:55:20  15                    MS. CHANG:  She's 11 years old.

16                    THE COURT:  At the time or now?

17                    MS. CHANG:  No.  At the time, she was five

18     and six years old.

19                    THE COURT:  Okay.  I've heard enough.

14:55:34  20                    MR. BUTLER:  Your Honor, the staff in my

21     office -- I don't mind you putting it all on me.  I actually

22     would prefer that.

23                    THE COURT:  All right.  I just didn't want

24     you to think that I deemed them any less significant.

14:55:46  25                    MR. BUTLER:  Oh, I understand.

1           THE COURT:  And that goes for both sides.

2           MS. BARNETT:  Thank you, Your Honor.

3           THE COURT:  I'm going to order the limited

4    production along the lines of what Mr. Butler has just

14:56:10 5    suggested.  I will give the parties the first shot at working

6    out a proposed protective order.  I want it as restrictive

7    and narrow as it possibly can be with absolutely no copies

8    being provided to the defendant.  He can watch it under the

9    auspice of one of the counsel.  Otherwise, it is to be kept

14:56:40 10   in a safe under the circumstances Mr. Butler has proposed.

11   It also will be destroyed at the conclusion of the

12   proceedings or returned to the United States.  And -- I'll

13   leave it at that.

14           I know the United States may object, disagree, and

14:57:04 15   that will be -- is noted.  But am I missing something that

16   would further protect the victim?  Because that is a primary

17   consideration.  I will give you a chance, I'm sure, before

18   we're through to think it more fully.

19           But understanding that's my goal.  Limited

14:57:30 20   production with absolutely this having no precedential value

21   in any other case.  Because I have never seen in 33 years,

22   either as a prosecutor or as a judge, another one that fits

23   squarely with what we have, based upon the nature of the

24   material, the showing by the defense, the length of time that

14:57:52 25   has elapsed since the incident, or incidents.  I think

1    they're all aggravating circumstances.  And also trying to

2    avoid the problem that we would create if we don't do this of

3    just getting to trial and then having to put it off a couple

4    of months to allow you to do something you might want to do.

14:58:14  5           I just will order it disclosed.  And I'll give you

6    the first shot at that order.

7           Next one, Number 22.  That's actually -- we've done

8    all that.  The probable cause hearing -- I don't really feel

9    like I need to hear anything further on that unless there's

14:58:36 10    something the defense has in addition.

11                   MS. BARNETT:  Your Honor, the only thing I

12    think I would add -- we initially filed this, and what has

13    transpired since that time is just my suspicions about

14    whether there really is jurisdiction under MEJA have actually

14:58:56 15    gotten greater since the filing of this request for probable

16    cause hearing.  Obviously, a lot of this will be addressed

17    when you hear the other motions.

18                   THE COURT:  So would you like me to hold

19    that?

14:59:06 20                   MS. BARNETT:  Yes, Your Honor.

21                   THE COURT:  Okay.  Does the United States

22    have any problem with that?

23           I'll be honest with you.  My inclination coming in

24    here was to deny Number 24 after reading the briefs.  Having

14:59:20 25    said that, in light of the developments or the discussion

1    I've heard here today, I'm willing to carry it.  But my

2    inclination, based upon -- absent anything further is to

3    decline the motion.  Number -- and that's not final.  That's

4    just my inclination.

14:59:36  5                        MS. BARNETT:  Thank you, Your Honor.

6                        THE COURT:  I will give you a chance to

7    further address it.

8                  Number 23, which is the first motion to dismiss,

9    based upon, in essence, the venue grounds, I don't -- is

14:59:50 10    there anything else we need on that either in the form of

11    this:  Testimony, which I don't really think we need, because

12    the facts aren't disputed; or argument beyond what's in the

13    briefs?  Nothing from the United States?

14                        MS. CHANG:  No, Your Honor.  The statute

15:00:10 15    speaks for itself.

16                        MS. BARNETT:  Your Honor, I think I filed

17    a reply yesterday, which I think even more fully shows why

18    venue was placed in Georgia when they made the decision to

19    arrest him in Georgia.  I think a combination of our initial

15:00:26 20    brief and then our reply brief -- I don't think we need any

21    other argument on that.

22                        THE COURT:  I agree with you.  I think

23    that's fully briefed.  I don't need anything else on that.

24                  And then that takes us to Two, Three, Four, Five,

15:00:38 25    which I think what we all agree to do is either further brief

1      or at least put off hearing until later.

2            Do we -- both sides agree to that?

3                  MS. CHANG:  Yes, Your Honor.

4                  MS. BARNETT:  Of course, we think these

15:00:52  5      are all moot because we think our first motion to dismiss

6      should be granted, but --

7                  THE COURT:  So what you're saying is you

8      would like me to go ahead and rule on the first one as

9      quickly as possible so that if I agree with you, then they

15:01:06 10      can take it up to Judge Kallon.  If I disagree with you, you

11      can take it to Judge Kallon.

12                  MS. BARNETT:  Your Honor, it is your

13      prerogative.

14                  THE COURT:  No.  That is a good point.  I

15:01:16 15      will try and get to the first one.

16                  MS. CHANG:  Your Honor, I just don't see

17      how the defense team can have it both ways when they're

18      protesting the subject matter jurisdiction of MEJA and then

19      asking you to dismiss the case pursuant to MEJA's venue

15:01:30 20      provision under Section 3238.

21                  MS. BARNETT:  3238 does not just relate to

22      MEJA.  3238 relates to any statute in the entire code that

23      has to do with foreign crimes.  So 3238 is not just MEJA.

24                  MS. CHANG:  I misspoke.  That is the

15:01:48 25      applicable venue statute for the MEJA statute, Your Honor.

1    That is what I meant.  I just -- based on Section 3238, the

2    clauses need to be read in the disjunctive.  And the first

3    one in time prevails.

4         I don't know how much clearer the statute can read.

15:02:08  5    It says if -- it actually starts with the words, "but if."

6              THE COURT:  Right.  But all that comes

7    into play -- and I guess it's a theory for the defense that

8    the United States never had jurisdiction in this case, at

9    least for the purposes of now.  And to the extent there is

15:02:28  10   jurisdiction, it's not here; it's really a venue matter that

11   belongs over in the Northern District of Georgia?

12             MS. BARNETT:  Yes, Your Honor.  And in our

13   reply yesterday, we certainly pointed out to the Court that

14   the Government has actually in another case -- in an 11th

15:02:44  15   Circuit case they cited has actually admitted this is an

16   either/or statute.  And we think the cases fully show that

17   you establish venue in the arrest.  And only when the

18   defendant is a fugitive or in another country do you even get

19   to establish venue under that second clause.

15:03:06  20        Again, this, we believe, has been fully briefed.

21        There is one other case when I was going back

22   today -- it was either -- and this isn't -- it's not even in

23   a -- it's not in a court ruling.  But when I was reading some

24   of the other MEJA cases over the weekend, it was either in

15:03:26  25   Kentucky or Virginia.  And I'm sorry.  I don't have it here

1  because I was sort of thinking about it on the way here.

2  There's this brief even remark where the defense counsel

3  says, when they brought this case, they knew they didn't have

4  venue, and so they forced us into waiving venue.

15:03:44  5        I think the Government has taken a position in other

6  cases where when you arrest someone, you do establish venue.

7  I don't know how the Government is taking a different

8  position in this case.  That's their right.

9            MS. CHANG:  Your Honor, I don't take issue

15:03:58  10  with the fact that 3238 establishes venue, first, in the

11  place of arrest or the venue in which the defendant is first

12  brought while in custody.  If that doesn't happen, then you

13  go with the venue of his last known residence.

14        Now, defense has not cited any cases that add an

15:04:18  15  additional requirement that the Government go to the ends of

16  the earth to arrest the person first before they can indict.

17  That would create absurd results, Your Honor.  I don't see

18  how that is a tenable position.

19            MS. BARNETT:  Your Honor, they just had to

15:04:38  20  come to Alabama.  He's been here the whole time.  He's had a

21  driver's license.  He's filed taxes.  He's gone to the VA.

22  They just didn't do their job.  They didn't go find him

23  before they indicted him.

24        Sometimes, as defense counsel, my only job is to

15:04:50  25  make sure they do their job.  And they didn't do their job in

1    this case.

2                    THE COURT:  Sure.  Are you saying -- are

3    you arguing that they must locate him and/or arrest him

4    before they indict him?

15:05:02    5                    MS. BARNETT:  If they know where he is,

6    Your Honor.

7                    THE COURT:  And your authority --

8                    MS. BARNETT:  They knew where he was

9    when -- CID held him in Germany until 2011.  CID held him.

15:05:12   10    Not Germany.  Because Germany was done with their

11    investigation.  CID told him he couldn't leave.  CID released

12    him in 2011 to leave Germany.  And they knew exactly where he

13    was going.

14                    THE COURT:  All right.  What is your best

15:05:28   15    authority for what you're saying; that they must first locate

16    or arrest him before they indict him?  What case is your best

17    authority for that?

18                    MS. BARNETT:  Your Honor, several that we

19    cited.  *Chandler* in the 1st Circuit.  *Wharton* in the Fifth

15:05:40   20    Circuit.  *Holmes* in the Eastern District of Virginia.  *Catino*

21    in the Ninth Circuit.  *Erdos* in the Fourth Circuit.

22         But we also argue that all of the cases that they

23    cited have to do with where the person is overseas.  And

24    that's how you get to establish venue in the second clause.

15:06:00   25    And there's some great quotes from their cases.  *Hsin-Yung*

says, therefore if the latter provision is relied on and the
defendant is indicted before he is brought into the United
States, he may be tried in that district.

Let's see. *Fraser* says, if the indictment -- this
is out of Tennessee. If the indictment in question is filed
before the offender is brought into this country, venue may
be established in the last known residence.

And *Feng* -- this is a great quote from *Feng*, which
is a case cited by them, a footnote. It says -- and *Feng* is
out of the Ninth Circuit. It says, one of the purposes for
the amendment, which is adding that second clause, is for
filing an indictment in the district of the offender's last
known residence or otherwise in the District of Columbia was
to prevent the running of the statute of limitations, which
there were none in this case, Your Honor, because this is a
sex abuse case. Congress wanted to provide an alternate
place to file an indictment and initiate criminal proceedings
other than the district into which the offender was first
brought in a situation in which the offender, not clearly a
fugitive, existed abroad or his location was unknown. And
that's not the case here.

MS. CHANG: Your Honor, those cases
clearly state that these clauses need to be read in the
alternative. There's no requirement that the Government take
all means -- exhaust means to arrest the offender before the

indictment -- I'm sorry.  To arrest the offender before they
can indict him.  That has never been the case in any
jurisdiction.  All those cases simply contemplate a situation
in which an arrest has not happened.  It simply has not
happened.

         And I will represent to the Court -- this is, of
course, something that the defense team could not be privy
to, but we absolutely did not locate him until we actually
had located him and arrested him in Georgia.  He was a truck
driver, Your Honor.  We did surveillance.  We did record
checks.  Of course, this was in -- this was CID.  And then it
was FBI.  It took two different agencies to pin him down.

         MS. BARNETT:  But before or after they
filed the indictment?  I mean, that's the big question,
right?

         THE COURT:  I think maybe if I take your
view of the world, yes.  If I take their view of the world,
no.  But the point is what you're saying is -- her question,
I think, is a fair one.  When you make these representations
that CID/FBI went to these great lengths and couldn't find
him, are you talking about post indictment or pre indictment?

         MS. BARNETT:  Pre indictment, Your Honor.
We found a last known residence but did not find a body.
Thus, we indicted him in the venue -- in the jurisdiction of
his last known residence.

1          THE COURT:  What you're representing to

2     the Court is you made extensive efforts via the agencies of

3     the CID and the FBI to locate him before he was indicted,

4     presuming that matters?

15:09:08  5          MS. CHANG:  We took all legal means

6     necessary to locate Mr. Evans, Your Honor.

7          THE COURT:  Took all what?

8          MS. CHANG:  Legal means necessary.

9          THE COURT:  I guess that's kind of not --

15:09:20  10    that's not a direct answer.  Did you have the FBI, for

11    instance, running driver's license checks, criminal

12    investigations, doing CID checks?

13         MS. CHANG:  Yes.

14         THE COURT:  Social security, taxes?

15:09:32  15         MS. CHANG:  Yes.  Well, taxes, Your Honor,

16    I think we have certain limitations on what we can --

17         THE COURT:  Yes, you do.  I understand

18    that.  I understand the limitations.  My point is:  What you

19    would say is, if an agent from the FBI or CID was on the

15:09:46  20    stand, they spent an appreciable amount of time -- my word,

21    not yours -- before the indictment, trying to locate the

22    defendant and were unable to do so?

23         MS. CHANG:  Yes.

24         THE COURT:  Okay.  And again, I'm not even

15:10:00  25    saying that's material.  I'm just making sure I understand

1          the representation.

2                    Okay.  Anything else?

3                         MS. BARNETT:  Your Honor, I mean,

4          obviously, they have represented something to the Court.  I

15:10:14   5          don't know whether -- I don't know timeline.  We don't even

6          think this is necessary.  We believe that when they're

7          arrested, venue lies there.  And there have been cases where

8          they have had to change the venue because of circumstances

9          that are beyond their control where they made the arrest in

15:10:30  10          another district and they ended up having to dismiss the

11          indictment and --

12                         THE COURT:  I think that is a pure legal

13          question in this case.  Do you agree?

14                         MS. BARNETT:  Yes.

15:10:42  15                         THE COURT:  I think the United States

16          agrees with that, don't you, Ms. Chang; that it is a legal

17          question?

18                         MS. CHANG:  Of the venue, Your Honor?

19                         THE COURT:  Yes.

15:10:50  20                         MS. CHANG:  Yes.

21                         THE COURT:  So we don't need anymore -- I

22          want to make sure I understand the representation.  Because

23          if it becomes material, I want to make sure what I was

24          hearing is correct.

15:11:00  25                    All right.  Anything else?

1       So in essence, what we're saying -- that's all as to

2  Number 1.  And we're not going to deal with Two through Five

3  today?

4                   MS. BARNETT:  Yes, Your Honor.  Thank you.

15:11:18  5                   THE COURT:  All right.  If we give you 60

6  days from today, which will put us at about -- April 11th is

7  a Saturday.  So if we give you until April 13 to try and

8  locate any additional CID files -- what I'm going to suggest

9  is let's have a conference call, say, 30 days out and see how

15:11:46  10  we're doing with locating anything.

11       For instance, now that I better understand the

12  Government's position, they may come back and say, we have

13  run all these down.  There is nothing additional.  We've made

14  everything available to the defense.  At that point, then I

15:12:02  15  can say, okay.  In light of the fact that you've had an extra

16  45 days, two months to brief it, I'm only going to give you

17  ten days to file -- the United States I guess would be next.

18  Or I'd give you a week.  Do you want to supplement.

19  Government, you can file your brief.  It ought to be able to

15:12:18  20  be done very quickly is what I'm saying.

21                   MS. BARNETT:  Yes, Your Honor.

22                   THE COURT:  And then if we have to have a

23  hearing, evidentiary or otherwise, we can do it -- expect it

24  to be very quickly after the briefs are filed.  So we can be

15:12:30  25  looking at, worst scenario, my hope is April.  Briefing is

1    done by the first of May, maybe a little bit later.  I would

2    have you in here certainly within a week to ten days of the

3    final briefing if we need a hearing on it.  Otherwise, what

4    I'll do is notify you and say, this is all legal.  I think

15:12:50  5    it's something I can do then.

6          The problem is if I get right on it, you're looking

7    at giving me maybe a week, ten days.  That's mid May.

8    There's no way you can make it to trial in June.  That's not

9    a problem.  I just think, for planning purposes, that's an

15:13:04 10    ambitious schedule.  All right?

11          MS. BARNETT:  Your Honor, I was thinking

12    the same thing that Mr. Butler asked me to inquire, which is

13    we've sort of had discussions with the Government already.

14    I've said to them, I don't know if we're going to get to

15:13:24 15    June.  I don't want to speak for them.  I don't necessarily

16    know that they're opposed.  Should we go ahead and start

17    addressing the fact that we're probably not going to make

18    June, or should we wait a little while?

19          THE COURT:  My suggestion -- and that's

15:13:36 20    all it is, truly -- is let us have the 30-day conference

21    call.  See where we are.  You can evaluate your positions

22    based upon what you've heard here today.  It's not going to

23    be a problem.  Judge Kallon is as reasonable as the day is

24    long.  He'll work with everybody.  And I'm sure we can just

15:13:52 25    move it.  And my thought was we'd probably move it to the

1    July docket.

2         What I don't want to do is have the Government go

3    through the trouble of getting their witnesses here,

4    especially a child witness, and ramping up for that and then

15:14:04  5    not going forward.  I just think that would be bad.  So --

6              MS. CHANG:  Your Honor, we would not

7    oppose a motion to continue.  However much time we need to

8    prepare is good for the Government.

9              MR. BUTLER:  Your Honor, speaking for our

15:14:20 10    office, administratively not legally, there are a lot of

11    hoops that I may have to jump through regarding possibly

12    conducting an investigation overseas.  Just so the Court is

13    aware of that.  There's just no way June could happen because

14    I have to get some approvals from people in D.C. --

15:14:36 15              THE COURT:  Even if we resolve all of this

16    right now, what you're saying, Mr. Butler?

17              MR. BUTLER:  If the case is dismissed.

18              THE COURT:  No.

19              MR. BUTLER:  No.  I'm sorry, Your Honor.

15:14:46 20    If these issues are resolved?

21              THE COURT:  For instance, if they're

22    resolved March 1st, you still think June would not be

23    practical?

24              MR. BUTLER:  It will probably take a month

15:14:56 25    and a half for me to go through the administrative cycle of

getting approval to have someone go overseas.  I guess maybe
I just need to jump on it now.

THE COURT:  That would be my suggestion
is -- but again, not that I'm even leaning in that direction.
But if I were to recommend it be dismissed and Judge Kallon
agrees that it should be dismissed, then I don't want you to
send your person overseas.

MR. BUTLER:  And that's the other
consideration.  But I could at least get the process in
place.

THE COURT:  Can I suggest something here?
You got six lawyers here.  Why don't you all talk and figure
out an alternative, taking into consideration his concerns,
your concerns for your witnesses.  The only thing we can't
predict is how long it's going to take before you're
satisfied and I'm satisfied CID doesn't need to do anymore
searching.  Actively.  You know, obviously, there's a
continuing duty to disclose if something else comes
available.

You know, Mr. Butler, if you get the approval now
or, let's say, in the next month to go, let's say in April or
May and then the case is dismissed, the money is not
expended.

MR. BUTLER:  The only thing -- my district
office has already looked into it.  There is a really weird

1    window with the passports.  Because if we go on a normal

2    passport, it's one process.  If we go as official business,

3    we have to go quickly.  My point being if the approval

4    comes --

15:16:38  5                    THE COURT:  Oh.  It only lasts so long?

6                    MR. BUTLER:  If the approval comes

7    through, let's say, tomorrow, my people have to go within two

8    weeks.  Let's say the case goes away.  We've just expended,

9    you know, X thousands of dollars to send them overseas.  So

15:16:52 10   it is a little tricky.  Tricky administratively.

11                    THE COURT:  Okay.  Why don't you at least

12   begin the process and don't -- ask them not to authorize it

13   until we know where we are.

14                    MR. BUTLER:  Yes, Your Honor.

15:17:04 15                    THE COURT:  Is that reasonable?

16                    MR. BUTLER:  Yes, Your Honor.

17                    THE COURT:  Anything else?

18                    MS. CHANG:  No, Your Honor.

19                    THE COURT:  I was going to say I'm not

15:17:14 20   sure we can find anything else.  I think we've literally

21   covered the globe.  All right.

22        Do you all need a date as far as filing briefs on

23   the -- what is it?  Third, fourth, and fifth motion?

24                    MS. CHANG:  I thought -- Your Honor, I

15:17:32 25   thought Ms. Barnett's representation was she would need

1    materials from CID before.

2                    THE COURT:  So we really -- you want to

3    hold on that, too?

4                    MS. BARNETT:  I don't -- I mean, I guess

5    they could probably respond to Five.  But I mean, yes.  Your

6    Honor, I'm not expecting them to respond to some.  We've got

7    all these hanging out there.

8                    THE COURT:  Well, actually -- and this is

9    not a bad thing.  I think Five is an interesting -- actually,

10   doesn't Five really sit on its own?  Because it's really more

11   of your typical motion to dismiss or a bill of particulars.

12                   MS. CHANG:  Is that the bill of

13   particulars?

14                   THE COURT:  Yes.  Actually thank you for

15   pointing that out.  I don't see why we can't address Five

16   now.  It doesn't have the jurisdictional or the venue issues

17   to it.  Correct me -- am I not right, Ms. Barnett?

18                   MS. BARNETT:  Right.  I guess I don't need

19   additional material for Five.

20                   THE COURT:  To address that?  Now, is the

21   Government -- now, keeping in mind you just got this

22   yesterday.

23                   MS. CHANG:  Yes, Your Honor.

24                   THE COURT:  Can I just voice my concerns

25   on this one?  And I'm not telling you where I'm going because

1     I'm not sure.  I haven't seen your response.  The one thing

2     when I read the indictment again, I noticed the long period

3     of time.  It indicated course of conduct to me.  In other

4     words, more than one event.  Because usually most sexual

15:18:54  5   abuse, much pornography, whatever it is, generally has a

6     single event date or on or about such-and-such date.  This

7     indictment, if I -- and I've got it right here.  It says in

8     Count 1, Paragraph 5, from on or about May 1, '07, to on or

9     about December 31, '08, the defendant did knowingly engage in

15:19:22 10   a sexual act; to wit, et cetera, et cetera.

11          You could read that either as a single act -- but

12    that struck me as odd because it's such a long period of

13    time -- or multiple acts.

14          Then I read the defendant's motion.  And it looked

15:19:40 15   like there has somewhere somehow been some indication that

16    there are multiple acts.  And I'm a little unclear on that.

17          What is the Government's theory?  Is it a single

18    act, or is it multiple acts?

19               MS. CHANG:  Multiple acts, Your Honor.

15:19:58 20               THE COURT:  Okay.  Do you feel comfortable

21    addressing this motion at this time?  Number 38?

22               MS. CHANG:  Yes, Your Honor.

23               THE COURT:  Okay.  Well, then I'll hear

24    from you on that.

15:20:08 25               MS. CHANG:  Well, I just did some research

today and was able to find well-settled law and plenty of

support for the fact that an indictment is constitutionally

sufficient if it, quote, tracks the wording of the statute as

long as the language sets forth the essential elements of the

crime. *United States V. Yonn*, an 11th Circuit case from

1983.

And the test is not whether, quote, the indictment

could have been framed in a more satisfactory manner but

whether it conforms to minimal constitutional standards. And

this is from *United States V. Haas*, a Fifth Circuit case from

1978, citing the United States Constitution Amendment VI.

Also under *United States V London*, a Fifth Circuit

case from 1977, the Court ruled the test is not whether the

indictment might have been drawn with greater certainly and

exactitude but whether it set forth the elements of the

offense charged and sufficiently advised defendants of the

charges.

And the *Haas* Court -- the case I mentioned

previously -- ultimately decided that bare allegations in an

indictment are sufficient to withstand a motion to dismiss

even when a bill of particulars is needed for the defendant

to prepare for trial.

THE COURT: Okay. I don't agree with any

of the general background law. My problem with this one is

what I'm hearing is this is not one event. This is multiple

1    events.  So how for due process considerations does the

2    defendant know what he's charged with -- and for double

3    jeopardy purposes -- so you don't come back and charge him

4    with another event a year from now?

15:22:00   5                MS. CHANG:  But the remedy, Your Honor, it

6    would be a bill of particulars.  It wouldn't --

7                THE COURT:  Oh, I agree with you.  I don't

8    think this should be dismissed at all on these grounds.  No.

9    I'm leaning more towards a bill of particulars.

15:22:20  10                MS. CHANG:  Your Honor, the allegations as

11   set forth in the indictment -- I agree that it's not

12   completely clear whether it's a single act or multiple acts.

13   The time period in which it was covered is the way that we

14   charged it because it was multiple acts.  Now, whether --

15:22:48  15   Your Honor, the bill of particulars --

16               MR. FORTUNE:  Your Honor, we could just

17   actually have more time to brief the issue.  Specifically --

18   I mean, and just so the Court understands where the

19   Government would be going on this in the sense of is -- yeah.

15:23:12  20   If we could just have some more time on that.

21               THE COURT:  Sure.  No.  No.  And I only

22   went here because I thought it might be easy.  Do you

23   remember my comment nothing is easy?  All right.  Nothing is

24   easy.

15:23:22  25               A week?  Just to address this one issue, please?

1            MR. FORTUNE:  Yes, Your Honor.  That would

2      be more than enough.

3            THE COURT:  If not, tell me.  It's not

4      like we're in a hurry because of these other things going on.

15:23:34  5      How about this?  Ten working days to address Number 5,

6      Document Number 38.  We'll set a telephone conference in 30

7      days.  We all probably realize we're going to most likely

8      stand down for an actual June date, but we're all going to

9      work towards getting it resolved, if it goes to trial, as

15:23:54  10     quickly as reasonably possible.  Agreed?

11           MR. FORTUNE:  Your Honor, obviously, I

12     anticipate defense would want to maybe respond to whatever we

13     brief.  And to hopefully expedite that, where the Government

14     obviously would be going, Your Honor, is in the sense of --

15:24:08  15     we actually just had this issue go before the 11th Circuit on

16     a production of child pornography indictment as well.  And

17     so -- which was the *Murry Malone Bailey* case.  And so we will

18     be taking portions from caselaw there.  And the public

19     defender's office was defense counsel on that case, Your

15:24:34  20     Honor.

21           In addition, Your Honor, specifically what we

22     would -- the Government's position is going to be is that

23     multiple different acts within that time frame have been

24     charged and that he has been put on notice of that not just

15:24:50  25     from the indictment but also from discovery in the sense of

1    within the video interview that they've watched and seen,

2    it's indicated that the child says that he engaged in this

3    type of conduct on at least three occasions.  But she is

4    unable to give anymore specificity for us to charge three

15:25:10    5    distinct events.

6        And so the Government's position is going to be that

7    there's no unanimity requirement in the sense of -- then

8    there's a caselaw that references guns, for example.  We can

9    prove -- we can charge couple of days multiple different

15:25:30   10    guns, and the jury just has to find that he possessed one of

11    them.  They don't have to agree as to which gun.

12        It's going to be the Government's position that the

13    jury does not have to agree to which specific act.  You know,

14    they can find beyond a reasonable doubt the first or the

15:25:44   15    second or the third as long as they find one that the statute

16    has been violated.

17            THE COURT:  They must agree on one.

18            MR. FORTUNE:  They have to -- yes.  They

19    must agree that one sex act occurred, but they do not have to

15:25:56   20    agree as to which conduct -- when she talks about three

21    different occasions, they don't have to agree that it was

22    this day that violated the statute versus the other day that

23    violated the statute is where the Government is -- position

24    at this point in time.

15:26:16   25            THE COURT:  Okay.  I guess my point is

what I hear you saying is in the discovery, particularly the
video, she indicates that there are three acts in this period
of time.

     MS. CHANG:  At least, Your Honor.

     MR. FORTUNE:  At least, correct.

     THE COURT:  And I guess that's kind of my
problem.

    They're shaking their heads.  The defense is shaking
their heads no.  I don't know what that means.

    Ms. Barnett, do you want to comment?

     MS. BARNETT:  Your Honor, it's two videos,
and then it is an interview that was only done in writing.
The first interview, she doesn't really say anything other
than that Mr. Rick filmed her.  Then -- but there's no
evidence of that.

    Then in the second interview, she talks sort of
about various incidents but doesn't ever really give a
specific incident.

    It's not until Ms. Chang interviews her in August of
2014, which is not on video -- I just have handwritten notes
from the special agent during that interview -- where the
minor was able to go back and review her prior two videos
where at that point she told Ms. Chang that it occurred at
least three times.

    So I don't know.  I mean, this is the first time

1    I've heard that they're now alleging it's three incidents.

2            THE COURT:  Well, and I guess here's my

3    question.  And I'm leaning, again, towards the bill of

4    particulars.  Nothing more than that.  But what happens if at

15:27:46  5    trial the victim says there were four incidents and one of

6    those incidents maybe was outside the charging period or you

7    can't tell because she can't be real specific?  Has the

8    defendant been given adequate notice at that point?

9            MR. FORTUNE:  Yes, Your Honor, in the

15:28:10  10   sense of --

11           THE COURT:  Even though you didn't present

12   that fourth -- what if they agree it's the fourth incident

13   and that's not one of the three that was presented to the

14   grand jury?  I can answer that.  No.  That won't work.

15:28:22  15         Yeah.  File a brief.  But I'm strongly leaning

16   towards a bill of particulars.  Because I don't -- I just --

17   I think it's correct.

18         All right.  Anything else?

19           MS. BARNETT:  Your Honor, if I may say

15:28:32  20   since I am familiar with the *Bailey* case, it is my -- and I

21   did not do the appeal.  I was in the middle of a trial when

22   things did sort of change on us.  And I don't know how the

23   11th Circuit is going to rule.  But one of the comments I

24   believe that was made to the Government's attorney by Judge

15:28:56  25   Tjoflat was you need to go back to Alabama and tell them they

1    need to put more specific stuff in their indictments or more

2    facts -- was it more facts?  You need to go back to Alabama

3    and tell them to put more facts in their indictment.

4            I'm just throwing that out there.  Again, it's not a

15:29:10   5    ruling.  But I'm concerned about what's coming out of the

6    Government.

7            THE COURT:  Do you know whether Judge

8    Tjoflat made that comment?

9            MR. FORTUNE:  Yes.  And I believe he did

15:29:20  10    in regards to the 2251 count.  There were -- it 100 percent

11    referenced same initials.  Had -- all four counts had the

12    exact same language.  However -- so yes.  He did say that,

13    Your Honor.

14            THE COURT:  All I'm trying to do is make

15:29:38  15    sure he gets adequate notice so we're not back here.

16            MR. FORTUNE:  I understand.

17            THE COURT:  That's all.  All right.

18    Anything else?

19            All right.  So the next thing we do, I anticipate,

15:29:50  20    will be you will brief this issue.  Ten days for the

21    Government.  I'll give you a week to respond.  Fair?

22            MS. BARNETT:  Thank you.  Yes, Your Honor.

23            THE COURT:  30 days from now, we'll set a

24    telephone conference.  That's all it is is just on the phone.

15:30:02  25    Hopefully we'll be better along knowing where we are with the

1    CID.  And then we'll go from there.

2                        MR. BUTLER:  Your Honor, one other thing.

3          Do you expect the parties to come together with

4    language on a proposed order?

15:30:08  5                        THE COURT:  Please.  Thank you for

6    reminding me.  Yes, sir.

7                        MS. BARNETT:  Do you want a deadline for

8    that?  Do you want to give us a deadline?

9                        THE COURT:  Does it help?  Yes.  That

15:30:22  10   was -- being lawyers, that was a silly question from me.  I

11   will say that.  Absolutely.

12         How about two weeks for that?  Is that reasonable?

13                        MS. BARNETT:  Yes, Your Honor.  Thank you.

14                        THE COURT:  That give you enough time to

15:30:32  15   do something?  Yes, please.

16         All right.  If there's nothing else, then we're

17   adjourned.

18                        MS. CHANG:  Thank you, Your Honor.

19                        (The Proceedings were concluded at

20   approximately 3:30 p.m. on February 11, 2015.)

21

22

23

24

25

1

2                         C E R T I F I C A T E

3

4

5          I, the undersigned, hereby certify that the

6    foregoing pages contain a true and correct transcript of the

7    aforementioned proceedings as is hereinabove set out, as the

8    same was taken down by me in stenotype and later transcribed

9    utilizing computer-aided transcription.

10          This is the 12th day of March of 2015.

11

              *Cheryl K Powell*

13    _____

14              Cheryl Renae King Powell, CCR, RPR, FCRR

15              Federal Certified Realtime Reporter

16

17

18

19

20

21

22

23

24

25

                    **CHERYL K. POWELL, CCR, RPR, FCRR**
                    Federal Official Court Reporter
                       1729 Fifth Avenue, North
                        Birmingham, AL 35203
                   256-508-4050/wrd4wrdrpr@aol.com