# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14-cr-0333-AKK-JEO |
| | ) | |
| RICK LEE EVANS | ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on Defendant's motion to dismiss premised on improper venue.  (Doc. 23).  The motion is fully briefed and ready for review. Upon consideration, the court finds that it is due to be denied.

## DISCUSSION

### Background[1]

The defendant has been charged with one count of aggravated sexual abuse of a child ("M.C.") when she was six or seven years old.  The acts purportedly occurred from on or about May 1, 2007, to on or about December 31, 2008, while M.C. was living with the defendant and his wife in Germany because M.C.'s mother was deployed during a significant portion of that time.  The defendant was also involved with the United States Army in Germany.  He was released from active duty on June 28, 2008, but remained in Germany until November 2011.

---

[1]Much of the background information is derived from the defendant's motion.  The United States does not dispute the representations of counsel in its response in opposition to the motion.  (Docs. 23 & 32).

In or about June or July 2009, M.C.'s step-grandmother reported that while M.C. was living with her, M.C. disclosed inappropriate sexual contact with the defendant during the time they were in Germany. M.C. was interviewed by someone at Children's Hospital and Prevention Services on or about July 7, 2009, regarding the alleged conduct. The results "could not confirm nor exclude the possibility of sexual abuse." (Doc. 23 at 2). On July 10, 2009, a Child Forensic Interview Specialist at Prescott House Child Advocacy Center conducted a video interview of M.C., during which she detailed sexual activity purportedly occurring while she lived with the defendant in Germany.

At some unspecified time, German authorities began an investigation into the allegations. They were assisted by Army CID personnel. Numerous persons were interviewed in Germany and the United States. The defendant's home in Germany was searched, as was a storage unit located in Alabama.

M.C. was interviewed a second time by the Army CID in November 2009. According to defense counsel, she provided information concerning inappropriate sexual contact, but also provided "multiple inconsistent statements." (*Id*. at 2). Additional interviews of persons who may have witnessed the alleged abuse or been victims of other abuse were also contacted.

On May 19, 2010, a German forensic psychologist questioned the integrity

of the interviews that had been conducted and the credibility of M.C.  German

authorities terminated the investigation concerning the sexual abuse allegations on

May 25, 2010.  (*Id*. at 2).

On January 24, 2011, United States authorities contacted the German

authorities and requested a release of the proceedings in accordance with article

VII(3)(c) of the NATO-Status of Forces Agreement.  This would allow United

States authorities to assume jurisdiction over the matter

On October 31, 2014, the defendant was indicted by the grand jury for the

Northern District of Alabama on one count of aggravated sexual abuse of a child

in violation of 18 U.S.C. § 2241(c).  (Doc. 1).  The indictment alleges that the

conduct occurred in Germany.  The defendant was residing in the United States at

the time the indictment was returned.  His last known address was in Lincoln,

Alabama.  (*Id*. at 2).  A warrant was issued.  The defendant was arrested in the

Northern District of Georgia on or about December 1, 2014.  He was afforded an

initial appearance in that District and was then transported to Birmingham.  He

had his initial appearance in this District on December 8, 2014.  He was arraigned

on December 15, 2014.

# DISCUSSION

## Venue

The defendant argues in his first motion to dismiss (doc. 23) that trial in this District is precluded under 18 U.S.C. § 3238, which provides:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

*Id*. Specifically, the defendant argues trial should be in the Northern District of Georgia where he was arrested following the return of the indictment.  (Doc. 23 at 4).  In support of this contention, he cites *Chandler v. United States*, 171 F.2d 821 (1st Cir. 1948), *United States v. Wharton*, 320 F.3d 526 (5th Cir. 2003), and *United States v. Holmes*, 672 F. Supp. 2d 729 (E.D. Va. 2009).

First, the statute must be read in the disjunctive.  *See United States v. Gurr*, 471 F.3d 144, 155 (D.C. Cir. 2006) (holding that "because [the defendant] was not arrested or 'first brought' into the United States until after he had been indicted in the District of Columbia, venue was proper in the District of Columbia"); *United States v. Hilger*, 867 F.2d 566, 567-68 (9th Cir. 1989) ("the two clauses of § 3238

4

should be read in the disjunctive") (noting the holding in *United States v. Lay ton*,

855 F.2d 1388 (9th Cir.1988), *cert. denied*, 489 U.S. 1046, 109 S. Ct. 1178 (1989),

*overruled on other grounds*, *United States v. George*, 960 F.2d 97 (9th Cir.

1992)); *United States v. Feng*, 277 F.3d 1151, 1155 (9th Cir. 2002) (holding that

the "second clause [of the statute] provides an alternative basis upon which to

establish venue"); *United States v. Fraser*, 709 F.2d 1556, 1558 (6th Cir. 1983)

("§ 3238 should be interpreted in the disjunctive").  Each clause provides an

alternative basis for venue.  *Feng*, 277 F.3d at 1155.

Next, the relevant questions are, What does the statute mean? and How is it

to be interpreted?  In *Feng*, the court stated that the term "first brought" means

"first brought into a jurisdiction [from outside the United States' jurisdiction]

while in custody."  *Id.* at 1155 (citing *United States v. Liang*, 224 F.3d 1057, 1060

(9th Cir. 2000) (quoting *Hilger*, 867 F.2d at 568)).  "The term 'arrested' in the

statutory context means that ' "venue is in that district ... where the defendant is

*first restrained* of his liberty in connection with the offense charged." ' "  *Feng*,

277 F.3d at 1155 (citing *Liang*, 224 F.3d at 1061) (quoting *United States v.

Catino*, 735 F.2d 718, 724 (2d Cir.1984)) (emphasis added).  "The second clause

of § 3238 regarding venue in a district of the last known residence of an offender

or in the District of Columbia only applies 'if such offender or offenders are not so

arrested or brought into any district.' " *Feng*, 277 F.3d at 1155 (citing 18 U.S.C. §
3238).

The United States argues that because the statute provides two alternatives
for determining venue, the first in time prevails.[2]  (Doc. 32 at 6).  Specifically, it
states:

> In other words, if a defendant is first brought or arrested in a district
> based on a complaint or prospective, the government cannot
> subsequently establish venue in a different district based on last
> known residence.  Conversely, if the government indicts
> prospectively based on last known residence, it cannot later establish
> venue based on the location where the defendant is first brought or
> arrested in connection with the indicted offense.

*Id*.  The defendant replies that "[t]he plain meaning of [§ 3238] makes it clear that
the government must try the case where the defendant is either brought or arrested.
The second clause - last known residence - is only implicated when the defendant
is not arrested or cannot be arrested."  (Doc. 35 at 1).

The court finds that reason and common sense dictate that venue is proper
in this District, where the indictment was returned.  The court finds the reasoning
in *United States v. Layton*, 519 F. Supp. 942 (D.C. Cal. 1981), persuasive.  Layton
was charged in the Central District of California via indictment on four counts

---

[2]The "first in time" argument is derivative of the common-law principle that " 'the first in
time is the first in right.' " *United States by and through I.R.S. v. McDermott*, 507 U.S. 447, 449,
113 S. Ct. 1526, 1528 (1993), citing *United States v. New Britain*, 347 U.S. 81, 85, 74 S. Ct. 367,
370 (1954).

arising from the murder of a Congressman and the wounding of another person in the Republic of Guyana. *Id*. at 943. At the time of the indictment, he was incarcerated in Guyana on local charges. The indictment was brought in the District of his last known residence in the United States. *Id*. He was returned to the United States via New York and arraigned in the Central District of California where he was to be tried. *Id.* The court found that venue for both the indictment and trial was appropriate in the Central District of California under § 3238. Discussing the 1963 amendment to § 3238, the court stated:

> Defendant urges that questions of venue implicate important issues of public policy in light of which legislation must be construed. In this case, however, no public policy suggests that Congress intended that venue should lie in the district where the offender was "first brought" once an indictment has been returned in the district of his last known residence. As noted above, the original purpose of section 3238 was simply to provide an arbitrary rule of venue for offenses committed outside of the United States. The place of venue seems to have been arbitrarily fixed at the place where the criminal process is first set in motion. When the statute was amended in 1963, Congress provided a means of setting that process in motion earlier than had formerly been permitted that is, by filing an indictment in the district of his last known residence even though the offender has not yet been found in or brought to this country. There appears no reason why Congress would want to interrupt the proceedings, once begun, to move them to the district where the defendant later happened to be brought. Such a system would impose needless expense and inconvenience on the government, and much duplication of labor on the part of prosecuting attorneys, without any increase in convenience to the defendant.
>
> It is true that the first clause of the statute refers to "the trial,"

while the second refers to "an indictment." It seems, however, that this difference in wording came about because the two clauses were primarily directed at two different problems. The first clause contemplates the situation where the offender is already in the United States and his whereabouts are known, either because he has been brought to the United States or because he has been "found" in a district. When it enacted the first clause, Congress was not focused on the problem of tolling the statute of limitations but, instead, it intended simply to fix the district where criminal proceedings should take place. It may have used the word "trial" in order to track the language of Article III, Section 2, Paragraph 3 of the United States Constitution, which provides that when an offense is not committed within any state "the trial shall be at such place or places as Congress may by law have directed." In any case, there was no reason to make specific mention of the indictment, because when Congress assigned venue by using the word "trial," no one could reasonably have doubted that an indictment should be filed in the same district where trial venue was fixed.

The second clause, on the other hand, contemplates the situation where an offender's whereabouts are unknown or he remains out of the country, and the immediate problem is to prevent the running of the statute of limitations by filing an indictment. The primary problem sought to be addressed by the second clause of the statute, as described by the Senate Report, was that venue was not established so no indictment could be filed. *See* 1963 Cong. and Admin. News 661, *supra* at 5. This time, Congress assigned venue by providing a place where "an indictment" could be filed, because the filing of an indictment was central to its primary purpose of providing a means of tolling the statute of limitations. It could as easily have used the word "trial," which would surely as in the first clause have permitted the filing of an indictment in the same district, but use of the word "trial" would not have highlighted Congress's primary purpose. Therefore, this court does not believe that Congress, in using the word "indictment" to assign venue, intended to produce the extraordinary and uneconomical result suggested by defendant. Since this difference in wording appears to be insignificant, the words "but if," which preface the second clause, can

only be read as making an exception to the first clause.

> For the foregoing reasons, this court reads section 3238 as laying venue for both indictment and trial in the district of the defendant's last known residence, where, as here, the indictment is returned before the defendant is found in or brought to this country.

*Id*. at 945-46 (footnote omitted).

Defense counsel seeks to distinguish *Layton* by arguing that the indictment in that case was filed before Layton was returned to the United States unlike here where the defendant was already in this District at the time of his indictment. (Doc. 23 at 5). Counsel further argues that the prosecutors "could have very easily filed a complaint against Mr. Evans, arrested him in Alabama, and subsequently indicted him" or they could have waited until he returned to Alabama to arrest him. (*Id*.) Accordingly, counsel concludes the prosecution "cannot now rely on the venue statute for prosecuting this case in Alabama when they decided to arrest him in Georgia." (*Id*.)

The court does not find the defendant's retorts persuasive. The fact that the indictment in this case was returned after the defendant was in this country does not change the considerations, dynamics, or result in this case. It is a distinction without a legal difference in the overall purpose and intent of the statute. The fact that the United States could have arrested the defendant on a complaint before presenting his case for indictment also is a distinction without a legal difference in

this instance.  Lastly, the arrest of the defendant in the Northern District of

Georgia after return of the indictment does not vitiate the propriety of venue in

this District.

The defendant's reliance on *Chandler v. United States*, 171 F.2d 921 (1st

Cir. 1949), is misplaced.  In *Chandler*, the defendant was charged in the District of

Columbia premised on his actions during World War II.  He was arrested in

Germany after being indicted.  The plane transporting him to the United States

experienced mechanical difficulties and landed in Massachusetts on its way to the

District of Columbia.  The indictment in the District of Columbia was dismissed

and the defendant indicted in Massachusetts premised on his having been "first

brought" to Massachusetts.  The court held venue was proper in Massachusetts.

*Chandler* is distinguishable for at least two reasons.  First, the statute at that

time provided in full that "[t]he trial of all offenses committed upon the high seas

or elsewhere, out of the jurisdiction of any particular State or district, shall be in

the district where the offender is found, or into which he is first brought."  *Id*. at

932.  It did not contain the wording from the later amendment, which is now

applicable, providing, "but if such offender or offenders are not so arrested or

brought into any district, an indictment or information may be filed in the district

of the last known residence of the offender."  18 U.S.C. § 3238; *Layton*, 519 F.

Supp. 942.  Second, the two situations are factually different.  The defendant in

this case was not "first brought" into the United States after the indictment.  It is

undisputed that he was already in the country.

The defendant also cites to *United States v. Whorton*, 320 F.3d 526 (5th Cir.

2003), noting that the court found "venue was proper [in Louisiana] whe[n] the

defendant was arrested in Florida on a complaint out of Louisiana for insurance

fraud but then once transferred to Louisiana, [was] tried for [a] murder

[committed] in Haiti on an indictment that was issued subsequent to the

defendant's transfer to Louisiana."  (Doc. 23 at 4).  The United States argues that

*Whorton* is neither analogous nor applicable.  (Doc. 32 at 10).  In *Whorton*, the

defendant, who worked for an insurance company in Shreveport, Louisiana, was

charged in the Western District of Louisiana with insurance fraud.[3]  He was

arrested in Florida and transferred on that charge to Louisiana.  He was later

indicted in the Western District of Louisiana in a superseding indictment on a

charge of killing  his girlfriend/wife in Haiti.  320 F.3d at  529-31, 536.  On

appeal, the Fifth Circuit Court of Appeals found that venue on the murder charge

was proper in Louisiana because the defendant was "not arrested" on the foreign

murder charge until he was in Louisiana.  *Id*. at 536.  *Wharton* stands for the

---

[3]The defendant initially was indicted on conspiracy and mail and wire fraud charges.  *Id.*
at 536.

11

proposition that additional charges involving conduct under § 3238 may be brought in a district where the defendant is already in custody pursuant to some other charging document.  It does not preclude the prosecution and trial of a defendant in the district of indictment when the defendant is arrested elsewhere after the indictment is returned.

Lastly, the defendant cites *United States v. Holmes*, 672 F. Supp. 2d 739 (E.D. Va. 2009), noting that the court reversed "its own order denying the defendant's motion to dismiss for lack of venue where defendant was arrested in North Carolina for alleged sexual abuse that occurred in Japan, following an indictment being issued against him in Virginia."  (Doc. 23 at 4-5).  Counsel offers no further explanation for application of *Holmes* to the present situation.  The United States retorts that the defense has misconstrued its holding.   (Doc. 32 at 9). In *Holmes,* the defendant was indicted in the Eastern District of Virginia for a sexual assault occurring in Japan.[4]  The defendant was living in Illinois at the time of the indictment and he was arrested in North Carolina.  *Holmes*, 672 F. Supp. 2d at 740-42.  He was seen in North Carolina by a magistrate judge and transported to the Eastern District of Virginia.  *Id*. at 742.  His counsel filed, among other motions, a motion to dismiss for lack of venue.  The motion was denied.  The

---

[4]This was the defendant's second indictment in the Eastern District of Virginia.  The first indictment was dismissed without prejudice.  *Id*. at 741-42.

defendant pled guilty.  Before sentencing, the court became concerned about whether venue was proper.  *Id*.  The court held that venue was not proper in Virginia because the defendant's last known residence when the indictment was returned was in Illinois and not in the Eastern District of Virginia.  *Id*. at 751. *Holmes* is not helpful for various reasons, including that it is factually distinguishable and because it does not address the specific issue presented in this case.  The court finds that *Layton* is more on point and helpful.

To the extent that the defense seeks to distinguish the cases cited by the United States in its response, the court is not impressed.  Because the defendant was neither "arrested" nor "first brought" for purposes of the first clause of § 3238 before he was indicted in this District, which  was the "district of [his] last known residence," venue is proper under the second clause of § 3238.  The fact that he was subsequently arrested in the Northern District of Georgia does not alter that conclusion.  The motion to dismiss, therefore, is due to be denied.

## CONCLUSION

Premised on the foregoing, the motion to dismiss for lack of venue (doc. 23) is due to be denied.  Accordingly, it is so **RECOMMENDED**.

## NOTICE OF RIGHT TO OBJECT

Either party may file specific written objections to this report and

recommendation within fourteen (14) days.  Failure to file written objections to the proposed findings and recommendation contained in this report and recommendation shall bar an aggrieved party from attacking the factual findings on appeal except for plain error.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon opposing counsel.  *See* Fed. R. Crim. P. 59(b); 28 U.S.C. § 636

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the counsel for the United States and upon counsel for the defendant.

**DONE,** this the 21st day of May, 2015.

_____
**JOHN E. OTT**
United States Magistrate Judge