UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO. |
| ) | 1:14-cr-333-AKK-JEO |
| ) | |
| RICK LEE EVANS ) | |

**MEMORANDUM IN SUPPORT OF UNITED STATES' APPEAL OF MAGISTRATE JUDGE'S ORDER REQUIRING UNITED STATES TO IDENTIFY A FACT WITNESS FOR THE DEFENDANT (DOC. 112)**

COMES NOW, the United States of America, by Joyce White Vance, United States Attorney for the Northern District of Alabama, Jacquelyn M. Hutzell, Assistant United States Attorney, and Austin M. Berry, Trial Attorney, and files the above-captioned memorandum in support of the United States' Notice of Appeal (Doc. 115) of the Magistrate Judge's Order (Doc. 112) directing the United States to identify a fact witness for the defense regarding the length of the investigation and the timing of the prosecution. The District Court should accordingly overrule, in relevant part,[1] the Magistrate Judge's Order (Doc. 112) requiring the United States to provide Defendant a fact witness because it is an improper fishing expedition

---

[1] The United States does not appeal the part of Doc. 112 that denies the issuance of subpoenas to Christine Duey and Teresa McHenry, but only appeals the part ordering the United States to provide Defendant a fact witness.

1

prohibited by the Federal Rules of Criminal Procedure and in direct contravention of binding Supreme Court case law, as well as Eleventh Circuit case law. The Court should accordingly overrule the Magistrate Judge's Order.

## BACKGROUND

On February 4, 2015, Defendant filed a Second Motion to Dismiss based on a pre-indictment delay. (Doc. 30.) On August 4, 2015, Defendant filed an *ex parte* "Motion for Leave to Issue Subpoenas for Evidentiary Hearing," in which Defendant sought permission to issue subpoenas to Christine Duey and Teresa McHenry, both of whom are attorneys in the Department of Justice's Human Rights and Special Prosecutions unit, to testify in support of Defendant's theory of pre-indictment delay. (Doc. 83.) On August 28, 2015, the United States filed its opposition to Defendant's motion. (Doc. 93.) On October 5, 2015, the Magistrate Judge issued an order denying Defendant's Motion as it pertained to issuing subpoenas to Christine Duey and Teresa McHenry, but instead ordered the United States to identify a relevant fact witness for Defendant to question at the October 20-21, 2015 Motions Hearing. (Doc. 112.) On October 7, 2015, the parties had a phone conference with the Magistrate Judge regarding a variety of issues, including the Order in question. Following that phone conference, undersigned counsel now understands that the Order requires at the very least two witnesses (at least one witness to cover post-

2

DOJ referral and at least one witness to cover pre-DOJ referral), and possibly as many as six witnesses.[2]

The Magistrate Judge's Order required the United States to respond with the name of the witnesses by Friday, October 9, 2015, and to provide the defense with an opportunity to consult with these witnesses prior to the multi-day hearing scheduled to be held by the District Court.  The United States filed its Notice of Appeal to the District Court on October 8, 2015. The first part of the Motions hearing will take place on the afternoon of Friday, October 16, 2015. The hearing is scheduled to continue on Tuesday, October 20, 2015 and again on Wednesday, October 21, 2015.

## ARGUMENT

The Magistrate Judge's Order (hereinafter the "October 5th Order") directing the United States to provide Defendant a fact witness is essentially a court-ordered fishing expedition in what seems to be an attempt to breathe life into Defendant's

---

[2] During the phone conference on October 7, 2015, the United States sought clarification of the October 5th Order by inquiring of the Court whether the United States would be required to produce a witness for just the post-DOJ referral time-period, or whether it would need to try to locate the numerous investigators from the inception of the investigation back in mid-2009. In response, the Court inquired of Defendant's counsel, who clarified that she was mostly interested in the time period from late 2010 to the Indictment in late 2014. Based upon that representation, the United States was able to identify at least six witnesses who were meaningfully involved in the investigation of this matter, most of whom were from the pre-DOJ referral time period going back to late 2010. That number of witnesses does not include *every* investigator who made entries into the file, but only includes those who could reasonably be considered to have had a meaningful involvement.

3

meritless motion to dismiss based on pre-indictment delay. (See Doc. 112 at 8.) The Order states that "[a]llowing the defendant to pursue this motion requires that he be afforded reasonable, but limited, access to those with the requisite personal knowledge of what occurred and when." (Doc. 112 at 8.) This type of court-ordered discovery is improper because it violates the discovery rules, the deliberative process privilege, and the work product privilege.

Defendant's briefing on this topic cites no authority to support the claim that he has any right to additional information pertaining to his Second Motion to Dismiss. In fact, in an earlier order on June 11, 2015, (hereinafter the "June 11th Order"), denying Defendant's Motion to Compel documents to support the very same Second Motion to Dismiss at issue here, the Magistrate Judge found that Defendant has failed to make a requisite threshold showing that the delay was an attempt to gain a tactical advantage and, thus, that Defendant has no right to compel discovery of documents in a hope to find evidence. (Doc. 72.) More specifically, in that June 11th Order, the Magistrate Judge found that "[w]hile the delay is lengthy and the prosecution's explanation is not impressive, there is no evidence of any improper motive on the part of the prosecution. The defendant simply has not made the requisite showing to permit additional discovery on this motion." (Doc. 72 at 7 (footnote omitted).) On October 2, 2015, the Magistrate Judge reiterated this finding

4

in an order (hereinafter the "October 2nd Order") when denying Defendant's Motion to Reconsider that same Motion to Compel, which makes the October 5th Order under appeal here all the more perplexing. (*See* Doc. 111 at 3.)  In the October 2nd Order, the Magistrate Judge again found that "[w]hile the delay is lengthy and the prosecution's explanation is not impressive, there is no evidence of any improper motive on the part of the prosecution," and goes on to say that "[a]ccordingly, discovery is not authorized under the circumstances." (Doc. 111 at 3.) The Magistrate Judge is absolutely correct in his finding that "discovery is not authorized under the circumstances," but the United States respectfully submits that the October 5th Order is incorrect where it fails to recognize that the court-ordered fact witness amounts to unauthorized discovery.

## I.     Defendant Has Failed to Make the Threshold Showing Necessary to Require the Government to Produce a Fact Witness

At a minimum, to receive any discovery, including a fact witness identified by the United States, Defendant must make a threshold showing of each prong required to establish a due process violation predicated on pre-indictment delay. In United States v. Armstrong, 517 U.S. 456 (1996), the Supreme Court required a threshold showing before imposing additional discovery obligations on the United States in the context of a selective-prosecution claim.  In Armstrong, the Supreme Court required "some evidence tending to show the existence of the essential

5

elements of the defense." 517 U.S. at 468. In the pre-indictment delay context, the defendant must make a threshold showing of (1) actual prejudice and (2) intentional delay to gain a tactical advantage. See United States v. Benson, 846 F.2d 1338, 1341 (11th Cir. 1988) (citing United States v. Caporale, 806 F.2d 1487, 1514 (11th Cir. 1986), cert. denied, 483 U.S. 1021 (1986)); United States v. Butler, 792 F.2d 1528, 1533 (11th Cir. 1986), cert. denied, Waites v. U.S., 479 U.S. 933 (1986); Stoner v. Graddick, 751 F.2d 1535, 1543 (11th Cir. 1985); United States v. Lindstrom, 698 F.2d 1154, 1157-58 (11th Cir. 1983); United States v. Solomon, 686 F.2d 863, 872 (11th Cir. 1983); United States v. Willis, 583 F.2d 203, 207 (5th Cir. 1978).

Defendant has failed to make a threshold showing of **actual** prejudice.[3] Defendant has consistently maintained merely that he is unaware of the location of witnesses who were in Germany at the time. But nowhere does Defendant articulate who specifically he has actually tried to contact and been unsuccessful in locating. Indeed, in his February 4, 2015 filing (Doc. 30), Defendant mentioned a German law enforcement officer, Mr. Griebl, and American employees of the Children Youth Services center as being people he would like to call to testify. Defendant argued

---

[3] For a more detailed discussion of Defendant's failure to make a threshold showing of actual prejudice see Doc. 60, Government's Opposition to Defendant's Motion to Compel Production of Certain Documents, at 11-15; and Doc. 34, Government's Response in Opposition to Defendant's Second Motion to Dismiss, at 6-11.

that his inability to locate them amounted to actual prejudice. Since that filing, however, Defendant's counsel has been to Germany, met with Mr. Griebl (and others), and returned to the United States and withdrawn his request to depose any witnesses he located in Germany. That withdrawal of his request to do Rule 15 depositions means, presumably, that their testimony would not actually help Defendant and thus there is no prejudice. Similarly, Defendant has since located more than one of the employees who worked at the CYS and interviewed them. Undersigned counsel is personally aware of the contact made between Defendant's investigator and these witnesses, even though Defendant has not bothered to update the Court on those facts. Therefore, he cannot continue to claim an inability to locate those witnesses for an actual prejudice argument. He makes no other argument about what actual prejudice he has or will suffer, nor does the October 5th Order mention any actual prejudice found.

Likewise, Defendant cannot pass the second hurdle of the test articulated by Lovasco, Marion, and the Eleventh Circuit to prove a due process violation because there was no tactical advantage to be had. In fact, any pre-indictment delay arguably placed the Government at a tactical disadvantage and Defendant cannot make any showing of bad faith on the part of the Government. "[D]eliberate prosecutorial delay to gain tactical advantage" has been interpreted by the Eleventh Circuit to

mean that the government must violate "the community's sense of fair play and decency." Stoner, 751 F.2d at 1542; see Benson, 846 F.2d at 1342 (even with government's own admission that at least half of the delay was caused by pure negligence, the Eleventh Circuit rejected the defendant's pre-indictment delay claim because he failed to show that the government "deliberately delayed rendering the indictment in order to gain a tactical advantage over the defendant" and the record showed no "bad faith" on the part of the government).

Where, as is the case here, a defendant merely asserts that he *thinks* he could determine the cause of the delay with access to generally undiscoverable government information, the Eleventh Circuit has declined to order access to additional discovery. United States v. Lindstrom, 698 F.2d 1154, 1158-59 (11th Cir. 1983). The Lindstrom court was clear in requiring a threshold showing: "the court need not examine government files until the defense at least has suggested what tactical advantage the government could gain from the delay." Id. at 1159. Because the defendant provided "no evidence whatever that the delay was intentionally designed to obtain some tactical advantage" and no proof of "advantage to the government in delay," the court declined to order even an "*in camera* inquiry." Id. The October 5th Order turns this standard upside down by requiring the United States to produce a witness who might be able to *theoretically* provide evidence of intentional delay to

8

obtain a tactical advantage without requiring the defendant to identify that tactical advantage in the first instance.

Here, Defendant has failed to meet the threshold standard required for additional discovery. Like in <u>Armstrong</u>, Defendant has failed to provide "some evidence tending to show the existence of the essential elements of the defense."[4] Similarly, as in <u>Lindstrom</u>, Defendant is not entitled to access to undiscoverable government information because Defendant has made no showing whatsoever "that the delay was designed to obtain some tactical advantage" or even proof of an "advantage to the government in delay." In fact, Defendant is unable to make this threshold showing because there was no tactical advantage to be had by the United States.[5] Without a credible showing of some kind, putting forth some evidence tending to show **both** actual prejudice and bad faith to obtain a tactical advantage, Defendant is not entitled to additional discovery of any type.

The October 5th Order provides, as the rationale for requiring the United States to identify a witness, the simple fact that "the defendant has set forth specific

---

[4] The Magistrate Judge found as much when he properly relied upon the <u>Armstrong</u> logic in his finding that no additional documentary discovery was authorized in the instant case. (Doc. 72 at 3; Doc. 111 at 2.)

[5] For a more detailed discussion of Defendant's failure to make a threshold showing of tactical advantage see Doc. 60, Government's Opposition to Defendant's Motion to Compel Production of Certain Documents, at 8-11.

facts (*i.e.* dates of occurrences) concerning the evolution of this case and demonstrated that there was a substantial delay before an indictment was returned." (Doc. 112 at 6.) "Dates of occurrences" and the fact that the offense conduct occurred in 2007-08, followed by an indictment in 2014 do not rise to the level of actual prejudice, much less intentional delay to gain a tactical advantage. The October 5th Order misconstrues the law by relying on the simple uncontroverted timeline of this case to justify a deeper inquiry to *look* for intentional delay to gain a tactical advantage, rather than placing the burden on Defendant, as the Eleventh Circuit requires, to establish both actual prejudice and intentional delay to gain a tactical advantage in the first instance. In other words, the October 5th Order requires the United States to call an undefined number of unnamed witnesses so that the defense can fish for that elusive, non-existent evidence of intentional delay to gain a tactical advantange. The very open-endedness of the October 5th Order (i.e., no names, no number of witnesses) is prima facie evidence that this is a boundless fishing expedition unsupported by any precedent.

## II. The Rules of Discovery Preclude This Type of Fishing Expedition

The October 5th Order cites no case or discovery rule showing that "it is appropriate, reasonable, and relevant to allow [Defendant] to effectively pursue this defense by requiring the United States to produce a witness or witnesses with first-

hand knowledge of the case's progression through the relevant government agencies." (Doc. 112 at 6.) In fact, the rules of discovery preclude the exact type of defense fishing expedition the Order outlines here. See Fed. R. Crim. P. 16-17.

First, Federal Rule of Criminal Procedure 16(a)(2), titled "Information Not Subject to Disclosure," states, in pertinent part:

> this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

In Armstrong, the Supreme Court explained that Rule 16(a)(1)(C) permits a defendant to examine documents "material to his defense," but Rule 16(a)(2) precludes him from examining "Government work product in connection with his case." The Armstrong Court concluded that the defendant's selective-prosecution claim was not a "defense" within the meaning of Rule 16 because if it were, then "Rule 16(a)(1)(C) gives the defendant the right to examine Government work product in every prosecution except his own," which would be an absurd anomaly. *Armstrong*, 517 U.S. at 463. In other words, Rule 16(a)(2) categorically precludes a

11

defendant from obtaining the United States' work product in his own case, as well as the work product in other cases that might arguably be similar to his own.[6]

Second, Rule 17(c) of the Federal Rules of Criminal Procedure provides that:

> **For Production of Documentary Evidence and of Objects**. A subpoena may order the witness to produce any books, papers, documents or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Rule 17 was the basis of Defendant's Motion for Leave to Issue the DOJ subpoenas that directly led to the October 5th Order directing the United States to provide a fact witness for Defendant. (See Doc. 83.) But in order to obtain evidence under Rule 17(c), a party must show that the evidence sought must be relevant, admissible, and specific. United States v. Nixon, 418 U.S. 683, 699 (1974). The Supreme Court made clear that Rule 17 cannot and should not be used to provide a means of discovery for criminal cases. Id. at 698-99; see also Bowman Dairy Co. v. U.S., 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right to discovery in the broadest terms."); United States v.

---

[6] The United States recognizes that the October 5th Order attempts to preclude Rule 16(a)(2) and privileged deliberative process information by limiting Defendant's questions to factual information. The United States contends, however, that any information from any potential United States witness relevant to Defendant's Second Motion to Dismiss is almost exclusively deliberative and/or prohibited by Rule 16.

12

Noriega, 764 F. Supp. 1480, 1492 (S.D. Fla. 1991) ("Rule 17(c), which covers subpoenas for documents and other materials, is not a discovery device."). Moreover, it certainly was not intended to provide defendants the means to engage in a fishing expedition. Bowman, 341 U.S. at 221 (invalidating a clause in a subpoena for being a "catch-all provision, not intended to produce evidentiary materials but [to engage in] a fishing expedition to see what may turn up"). Indeed, a defendant must show more than a "mere hope" that something useful might turn up in the subpoenaed material. Gilmore v. U.S., 256 F.2d 565, 568 (2d Cir. 1958); see also United States v. Hang, 75 F.3d 1275, 1283 (8th Cir. 1996); United States v. Cuthbertson, 630 F.2d 139, 146 (3rd Cir. 1980); United States v. Gikas, 112 F.R.D. 198 (D. Mass. 1986). In essence, the October 5th Order's requirement to identify a witness is tantamount to a production of documents because any potential witness called would have to refresh his/her memory by referring to file notes, email communications, and other internal documents, all of which are protected by the deliberative process privilege and the work product privilege. In other words, Defendant is trying to obtain through testimony what he cannot obtain through documents; neither documentary or testimonial evidence is permitted here because both are protected.

Here, nothing in the rules of discovery entitles Defendant to a Government-produced fact witness regarding internal investigative procedures and prosecutorial decisions. In fact, Rule 16 precludes the discovery of information "made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). Furthermore, the Supreme Court of the United States has specifically found that Rule 17 should not be used as a means to engage in the type of fishing-expedition that the October 5th Order has required here. Indeed, the October 5th Order finds it "appropriate, reasonable, and relevant to allow [Defendant] to effectively pursue this defense by requiring the United States to produce a witness," which is another way of saying that Defendant has not yet met the threshold for establishing his defense, namely actual prejudice and tactical advantage, so he should be permitted to go fishing ("pursue this defense") to hopefully find such evidence. Defendant has not made any showing other than a "mere hope" that something useful to the defense might turn up, which is an improper basis to order information pursuant to Rule 17.

### III. The United States' Good Faith Representations About the Reasons for the Delay Are Sufficient.

Finally, the October 5th Order directing the United States to produce a witness is unwarranted because the Court may rely on representations made by the government regarding reasons for the delay and assume they are made in good faith

14

absent evidence from the defendant showing the prosecution delayed in an attempt to obtain a tactical advantage. See United States v. Lovasco, 431 U.S. 783 (1977); United States v. Surface, 624 F.2d 23 (5th Cir. 1980); see also United States v. Cannistraro, 800 F. Supp. 30, 54 (1992) ("In light of the absence of evidence showing intentional delay, the Government's representations that the investigation continued during the pre-indictment period must be taken in good faith and is a sufficient basis to defeat a finding of intentional delay."), but see Lovasco, 431 U.S. at 798-800 (Stevens, J. dissenting).

Here, undersigned counsel offered to try to answer questions at the upcoming hearing, but the October 5th Order rejected that overture. Specifically, the United States offered: "if the Court has any questions that have not already been answered in the voluminous briefing regarding the timeline, the United States is more than happy to try to answer those questions." (Doc. 93 at 10.) But the October 5th Order declared that "the offer of the United States to answer 'any questions' the court might have is unavailing." (*See* Doc. 112 at 7.)

In United States v. Lovasco, however, the Supreme Court, based on the Government's assertions in its brief and oral argument as to the reasons for the delay, overturned the Court of Appeals dismissal of an indictment.  431 U.S. at 796.  The Supreme Court went so far as to say that "We must assume that these statements by

15

counsel have been made in good faith." Id.  Similarly, in United States v. Surface, the Fifth Circuit relied on the government's assertions in its brief regarding the reasons for the delay absent any showing by the defendant for reason for the delay. 624 F.2d at 25. There, the Fifth Circuit assumed the government's representations were made in good faith.  Id.

By contrast, here, the October 5th Order requires the United States to identify witnesses simply because the United States tried to explain in its briefs the reason for the pre-indictment delay. Specifically, the October 5th Order declares that "[t]he need for evidence on this issue was demonstrated when counsel for the United States represented to the court that the delay was due to 'the need to investigate the case, the complex jurisdictional issues presented, and a need to locate the file from around the world.'" (Doc. 112 at 7 (quoting Doc. 72 at 7)). In other words, the October 5th Order implicitly rejects the holdings in the Supreme Court's decision in Lovasco and the 5th Circuit's holding in Surface by declaring that representations by the United States on this issue are not only insufficient to reject Defendant's bald assertions to the contrary, but the representations are themselves the *reason* that the United States now has to identify a witness. Such a final ruling by this Court would be a direct violation of precedent in the absence of any reasonable basis to do so.

16

Because Defendant has made no showing to the contrary, it is appropriate for this Court to rely on the Government's good faith representations of the reasons for the delay and overrule the October 5th Order in so far as it directs the Government to provide a fact witness to testify to that information.

## CONCLUSION

The United States respectfully requests the District Court overrule, in relevant part, the Magistrate Judge's Order (Doc. 112) requiring the United States to provide Defendant a fact witness.

Respectfully submitted,

JOYCE WHITE VANCE
United States Attorney


*/s/ Jacquelyn M. Hutzell*
JACQUELYN M. HUTZELL
Assistant United States Attorney


*/s/ Austin M. Berry*
Austin M. Berry
Trial Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 15, 2015, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide defense counsel with a copy of this filing.

>                       */s/  Austin M. Berry*
>                       Austin M. Berry
>                       Trial Attorney

ADDRESS OF COUNSEL:
Austin M. Berry
Trial Attorney
U.S. Department of Justice
Child Exploitation and Obscenity Section
1400 New York Ave, NW
Suite 600
Washington, DC 20005
Austin.Berry2@usdoj.gov