## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Case No.: 1:14-CR-333-AKK-JEO |
| | ) | |
| RICK LEE EVANS | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

### I. Introduction

Mr. Evans exercised his constitutional right to a trial and was subsequently found guilty by the jury. Mr. Evans maintains his innocence, but understands the Court's obligation to sentence him consistent with the jury's verdict. Given the offense for which Mr. Evans was convicted and Mr. Evans's history and characteristics and other § 3553(a) considerations, we respectfully contend that the appropriate sentence in this case is 30 years, followed by a lifetime of supervision. Such a sentence would comply with the factors outlined in 18 U.S.C. § 3553(a), given the circumstances of this case. A 30-year sentence is "sufficient but not greater than necessary, to comply with the purposes" of sentence. 18 U.S.C. § 3553(a).

### II. 30 years is sufficient when considering the history and characteristics of Mr. Evans and the additional § 3553(a) factors

#### A. Mr. Evans's history and characteristics support a 30-year sentence

Mr. Evans is 43 years old. He grew up in a military family, moving from state to state and to other countries throughout his childhood. Mr. Evans's father was a strict disciplinarian who used corporal punishment as a means to control his family. Mr. Evans had a hard time moving.

He did not have the skills to make friends easily and did not have the emotional support of his parents. Because Mr. Evans had a hard time fitting in, he spent most of his childhood alone without many friends.  At 20-years-old, Mr. Evans enlisted in the United States Army. One year later, he married Susan Evans and left the army because he had difficulty adapting. In 2004, at age 30, Mr. Evans asked the army to re-enlist, explaining that he had grown-up and was ready to be a soldier. Mr Evans realizes now that the first time he enlisted was for his father. But in 2004, he enlisted for himself.

During his time in the Army, Mr. Evans received numerous commendations and awards. He received the Joint Service Achievement Medal, the Join Meritorious Unit Award, the Army Good Conduct Medal, the National Defense Service Medal, the Global War on Terrorism Service Medal, the Iraq Campaign Medal, the Overseas Service Ribbon, and the Marksman distinction. In June 2008, Mr. Evans was honorably discharged with an E-3 rank. He entered the Army Reserves in 2008 and remained through March 2011.

Mr. Evans returned to Alabama in late 2011 to take care of his dying mom. During that time, he provided full-time care to her. He felt like she deserved his undivided attention after having lived with his emotionally unavailable father for so many years and because he had been away so long. It was a difficult time, but Mr. Evans helped his mother pass in June 2012. Following her death, Mr. Evans obtained his CDL and went to work for Swift Transportation, driving commercial vehicles across the country. During that time, he met Angie Cavendar. Mr. Evans was a good partner to Angie. He financially and emotionally supported her and her two children. Ms. Cavendar was aware of M.C.'s allegations while Mr. Evans was in Germany. But she loved him and believes that he is a good man and is not capable of harming a child.

Mr. Evans does not have any criminal history. When able to work, he has maintained employment. He has never used illegal drugs. Although not perfect, he had an intact marriage for almost 20 years and a stable relationship with Ms. Cavendar at the time of the arrest. During the course of the Germany investigation, the Army CID and German authorities interviewed more than 15 children and/or parents of children. None of the children indicated that they were ever sexually molested by Mr. Evans. Further, Ms. Cavendar's daughter was interviewed after Mr. Evans's arrest. She denied any sexual contact by Mr. Evans.

The is not the history and characteristics of a someone who deserves to spend the rest of his life in prison. 30 years is sufficient when considering Mr. Evans and the life he has lead.

### B.     A life sentence is not proportional to the crime when considering the nature and circumstances of the offense

360 months is an appropriate sentence in this case when considering the nature and circumstances of the alleged offense. From approximately May 2007 through December 2008, M.C. lived in Heidelburg, Germany, with Susan and Rick Evans. At no time did M.C. ever tell anyone that she had been touched or that she touched Mr. Evans. From December 2008 through April 2009, M.C. lived with her mother and step-father in Germany. During this entire time, M.C. did not tell her parents that Mr. Evans touched her. From April 2009 through May 2009, M.C. lived with her grandmother in Missouri. She did not tell her grandmother that Mr. Evans touched her.  From May 2009 through June 2009, M.C. lived with her step-grandmother in Alabama but did not tell anyone about the alleged touching. It was not until after her mother once again deployed to Germany that she told her step-grandmother that she had been touched. But, just a few days later, she denied touching during a forensic interview. From that point on, her

3

story has been inconsistent about how Mr. Evans touched her, when Mr. Evans touched her, and where Mr. Evans touched her.[1]  At no time during the trial did M.C. ever allege penetration. At most, she told the jury that Mr. Evans felt her private area while watching Kung Fu Panda and described how Mr. Evans's penis felt, even though she testified that she did not remember touching it.

If M.C.'s allegations are true,[2] this is a serious offense. It is clear that M.C. has been affected by what she believes to be true memories. But, a Life sentence is not the appropriate punishment when considering the need for escalating sentences for escalated offenses. By sentencing Mr. Evans to Life, this Court would be imposing the harshest possible punishment for a non-capital crime. This is the same sentence that someone who forcibly and violently raped a minor on multiple occasions would receive. Therefore a Life sentence is substantively unreasonable because it fails to distinguish among offenders and does not reserve the harshest sentence for conduct that causes the most harm.

### i.     The guidelines fail to distinguish among offenders

The failure of the guidelines to distinguish among more offenders based on their relative culpability has addressed by numerous sentencing and punishment scholars. These scholars believe that there must be escalating sentences for escalated behavior because sanctions must be established, "to induce a man to choose always the least mischievous of two offences; therefore where two offences come in competition, the punishment for the greater offence must be

---

[1]It should be noted that the German authorities fully investigated this case and dismissed the charges against Mr. Evans. This argument is more fully set forth in the numerous briefs filed in this case.

[2]Mr. Evans disputes the veracity of her statements.

sufficient to induce a man to prefer the less." *Mears et al., Updating the Study of Punishment*, 56 Stan. L. Rev. 1171, 1173 n. 5 (quoting Jeremy Benthan, An Introductioon to the Principles of Morals and Legislation (1789). The Supreme Court discussed this concept in *Kennedy v. Louisiana*, 554 U.S. 407 (2008), as grounds to prohibit States from imposing the death penalty on child rapists. The Court stated,

> In addition, by in effect making the punishment for child rape and murder equivalent, a State that punishes a child rape by death may remove a strong incentive for the rapist not to kill the victim. Assuming the offender behaves in a rational way, as one must to justify the penalty on grounds of deterrence, the penalty in some respects gives less protection, not more, to the victim, who is often the sole witness to the crime.

554 U.S. at 445-46.

This same rationale can be applied to the instant case to support a sentence of 30 years. Assuming the testimony is true,  Mr. Evans did not penetrate M.C. Mr. Evans did not threaten M.C. in any way. Mr. Evans did not isolate M.C. There are no allegations that Mr. Evans sexually molested other children. Therefore, a 30-year sentence more accurately reflects the alleged conduct in this case. The Eleventh Circuit has explained that reasoning when describing "just deserts":

> Because the punishment should fit the crime, the more serious the criminal conduct is the greater then need for retribution and the longer the sentence should be. The seriousness of the crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime.

*Irey*, 612 F.3d at 1206. It follows that the harshest sentences should be reserved for the most grievous offenses –  those that cause or threaten the greatest amount of harm. The crime for

which Mr. Evans was convicted causes serious harm to victims and society. Mr. Evans does not seek to diminish that harm. But, given the specific allegations at issue in this case, 30 years is sufficient punishment.

### ii.      A study of other statues and cases support a 30-year sentence

A study of other statutes and cases support a 30-year sentence when considering the nature and circumstances of this case. If convicted under Alabama law for the same offense, Mr. Evans would be facing a term of not less than 10-years and a maximum term of not more than 20-years. *See* Ala. Code § 13A-6-69.1, § 13A-5-6. In Germany, where the offense allegedly occurred, Mr. Evans would be facing a 5-year maximum sentence. *See* Section 176 of the German Criminal Code. In reviewing other cases in which a defendant was convicted of violating 18 U.S.C. § 2241(c), the "typical federal sentence" for an offender charged under this statute is 30 years. As government counsel explained to this Court during pre-trial proceedings, the Eighth Circuit has the majority of the § 2241(c) cases. Although not a scientific study, it appears that the majority of the defendants receive 30-year sentences and that Life sentences are reserved for some of the most heinous crimes. *See U.S. v. Parshall*, 600 Fed. Appx. 485 (8th Cir. 2015) (defendant sentenced to 30 years for digitally penetrating 6-year-old with hand and mouth on multiple occasions and instructing her to keep it a secret); *U.S. v. DeCoteau*, 630 F.3d 1091 (8th Cir. 2011) (defendant sentenced to 30 years for digitally penetrating a 5-year-old on multiple occasions and having sexual contact with another minor); *U.S. v. DeMarce*, 564 F.3d 989 (8th Cir. 2009) (defendant sentenced to 30 years for attempted aggravated sexual abuse where defendant grabbed the 11-year-old victim's arms and hit her in the fact about 10 times in an

attempt to abuse her); *U.S. v. Lohnes*, 554 F.3d 1166 (8th Cir. 2009) (defendant sentenced to 30 years where he hit the 7-year-old victim on her head and forced her to perform oral sex); *U.S. v. Espinosa*, 585 F.3d 418 (8th Cir. 2009) (defendant sentenced to 30 years where he repeatedly raped a 12-year-old girl with an IQ of 50, resulting in redness, swelling, and bruising in her vaginal areas, and also forced sexual contact with the victim's sister).

Though few such cases are prosecuted in the Eleventh Circuit, *U.S. v.* Irey, 610 F.3d 1160 (11th Cir. 2010), is an illuminating point of comparison. In that case, the defendant traveled multiple times to engage in the sexual rape and torture of more than 50 children. He was prosecuted for violating 18 U.S.C. § 2251(c), for enticing minors to engage in sexually explicit conduct outside the United States for the purpose of producing a visual depiction. The maximum penalty that he could receive was 30 years.

Alabama, as well as the  Eight Circuit and the Eleventh Circuit, have reserved Life sentences for more heinous acts of sexual abuse. In Alabama, a Life sentence must be imposed when an adult defendant is convicted of penetrating or engaging in oral sex with a child.  *See* Ala. Code §§ 13A-6-61, 13A-6-63, 13A-6-65.1, 13A-5-6.  The Eight Circuit courts have sentenced defendants to Life in circumstances similar to those described by the Alabama rape, sodomy, and sexual torture statutes. *See U.S. v. Goodale*, 738 F. 3d 917 (8th Cir. 2013) (defendant sentenced to Life for crossing state lines and forcing two male victims to perform oral sex and sexually gratify the defendant, where the sodomy occurred over a multiple years and began when were 7 to 10 years old); *U.S. v. Brown*, 330 F.3d 1073 (8th Cir. 2003) (defendant sentenced to Life for kidnaping and raping a 10-year-old girl for days, resulting in bruising to her face and body and a vaginal tear); *U.S. v. Wright*, 540 F.3d 833 (8th Cir. 2008) (defendant sentenced to

Life for raping a 6-year-old girl continually until she was 11 years old and for raping a 3-year-old boy by penetrating his anus approximately 6 times).

In the case of Dwain Williams, the Middle District of Georgia sentenced the defendant to Life. Mr. Williams had accompanied his wife, a member of the Armed Forces, to Japan where he repeatedly raped his 9-year-old stepdaughter for a period of four years by forcing her to engage in vaginal and oral intercourse. *U.S. v. Willilams*, 7:09-CR-8-1 (M.D. Ga.). During sentencing, the court stated that not only had the defendant raped the young girl but threatened to beat her if she told. *Id*. Tr. Sent. Hr. (Doc. 50). The court was disturbed that the rape happened "over a period of years," ultimately persuading the court to sentence Mr. Williams to Life. *Id*. In the case of *U.S. v. Puente*, 267 Fed. Appx. 863 (11th Cir. 2008), the Northern District of Florida, sentenced to the defendant to Life for sodomizing his stepdaughter from the time she was 6 until she was 8 years old.. 267 Fed. Appx. 863. And in *U.S. v. Thomas*, the Northen District of Georgia sentenced the defendant to Life for anally raping his daughter and digitally penetrating her vagina while they were on a cruise ship for a family reunion. 1:09-CR-105-TCB-GGB (N.D. Ga.).

Mr. Evans respects that he has been convicted by a jury of his peers. However the offense for which he was convicted does not rise to the level that supports a Life sentence. If the Court were to sentence him to Life, Mr. Evans would be sentenced the same as persons who rape and sodomize minors for multiple years. A Life sentence would therefore fail to afford adequate deterrence to more harmful criminal conduct and result in a disproportionate sentence for the conduct found by the jury. A Life sentence does not accurately reflect the nature and circumstances of this case and this defendant. As such, a 30-year sentence is the appropriate

sentence in this case.

C.    **30 years is sufficient to reflect the seriousness of the offense, to propose respect for the law, and to provide just punishment for the offense**

A 30 year sentence, followed by a lifetime of supervised release, is sufficient but not greater than necessary to reflect the seriousness of the offense and to provide just punishment. Any time that Mr. Evans spends incarcerated will be extremely difficult considering the crime for which he was convicted. Even though he does not have criminal history, it is likely that he will be housed in a high-security penitentiary. He will have a "mark" on his back for the entirety of the time that he is incarcerated and will have to be vigilant about protecting himself. There will not be one day that goes by while he is incarcerated that he will not think of this case and feel the punishment this Court has imposed.

If this Court sentences Mr. Evans to 30 years, even with good time credit, Mr. Evans would not be eligible for release until he is almost 70 years old.[3] Thereafter, he will be subject to arduous supervision requirements by U.S. Probation for the remainder of his life.

D.    **30 years is sufficient to afford adequate deterrence and protect the public from crime**

Although Mr. Evans maintains his innocence, 30 years is sufficient to afford adequate deterrence to Mr. Evans and other individuals contemplating this crime. Mr. Evans is asking this Court to let him out when he is 70-years-old and place him on supervised release for the rest of any life that he may have. There is no allegation that Mr. Evans molested any other children.

---

[3]If Mr. Evans were to receive good time credit, he would serve approximately 26 years and 2 months in prison.

9

Therefore, it is very doubtful that age 70, he would get out and commit any crime. But, just in case, this Court would have a safeguard in place because Mr. Evans would be subject to arduous supervision, including required sex offender treatment, polygraphs, sex offender registry and notification requirements, and continual contact with U.S. Probation.  Additionally, Mr. Evans could participate in sex offender treatment at the Bureau of Prisons to give this Court comfort that when he is released, he will have already begun treatment that he will have to continue once on Supervised Release. Therefore, 30 years is sufficient to afford deterrence and to protect the public from crime by Mr. Evans.

     **E.**     **30 years is sufficient to and would allow Mr. Evans to receive medical care outside the walls of prison for the last few years of his life**

If the Court sentences Mr. Evans to Life, there is no possibility that he will be released. 18 U.S.C. § 3264(b) (prisoners cannot receive good time if they are serving a Life term of imprisonment). A life sentence would burden the BOP with providing Mr. Evans with medical care for the rest of his life, for which the BOP admits that it does not have the necessary resources. *See* OIG, DOJ, The Impact of An Aging Inmate Population on the Federal Bureau of Prisons May 2015 (Revised February 2015) (finding that aging inmates are more costly to incarcerate and that the BOP lacks appropriate staffing levels to address the needs of an aging inmate population).  In a recent opinion by the Seventh Circuit, the appellate court encouraged judges to consider the appropriateness of long sentences that result in a defendant become aged while incarcerated. *See U.S. v. Presley*, 790 F.3d 699 (7th Cir. 2015). The appellate court stated that criminals tend to reduce recidivism naturally as they age, but that the burden on the prison system increases expeditiously. *Id*.

The acts for which Mr. Evans was convicted occurred more than 6 years before his arrest. For more than 6 years, there were no additional alleged incidents. Therefore, this Court should have no fear that Mr. Evans will be a risk at age 70. Therefore, by sentencing him to 30 years, with a lifetime of supervised release, this Court could ensure his release at a time when his medical care costs have begun soaring and his medical needs will be more demanding. By allowing him to seek medical treatment outside prison, the BOP would not have to pay those costs or meet those needs. Therefore, a 30-year sentence would accomplish the goal set forth in 18 U.S.C. § 3553(2)(D), which requires medical care to be delivered in the most effective manner.

### III.        A Life sentence is not supported by the guidelines

Defense counsel made numerous objections to the PSR. Mr. Evans stands on those objections, particularly to the facts within the Offense Conduct section. With regard to issues the Court must address in determining the correct sentencing guideline range, Mr. Evans objects to the 5 point enhancement at Paragraph 32 of the PSR.  The government did not present testimony that the conduct alleged by M.C. (touching of the genitalia) occurred on more than one occasion. Defense counsel will not rehash the arguments about the inconsistencies in M.C.'s various statements that were presented to the jury.  But even giving the government the benefit of the doubt, the government still did not present testimony that the touching of the genitalia – his or hers – occurred more than once.  As a result, the correct Total Offense Level is 40 which, combined with Criminal History Category I, results in a guideline range of 292-365 months. Because the statutory mandatory minimum is higher than the low-end of the guideline range, the

adjusted guideline range is 360-365 months.

## IV. Conclusion

30 years is sufficient but not greater than necessary when considering the § 3553(a) factors. The guideline correctly calculated guideline range is 360-365 months, making a 30-year sentence a guideline sentence. But, even if the Court overrules Mr. Evans's objection, 30 years is still appropriate. Mr. Evans has served his country and has worked hard to be a productive member of society. Mr. Evans history and characteristics do not support a Life sentence. And while the nature and circumstances of the offense are serious, a Life sentence is unreasonable. While maintaining his innocence, Mr. Evans understands that this Court must sentence him. For the reasons set forth above and any other reasons this Court deems compelling, Mr. Evans respectfully asks this Court to sentence him to a 30-year term of incarceration followed by a lifetime of Supervised Release.

Respectfully submitted,


KEVIN L. BUTLER
Federal Public Defender


**/s/Sabra M. Barnett**
Sabra M. Barnett
Assistant Federal Public Defender
Office of the Federal Public Defender
Northern District of Alabama
505 20th Street, North, Suite 1425
Birmingham, Alabama 35203
(205) 208-7170 Office
Sabra_barnett@fd.org

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

Respectfully submitted,

**/s/Sabra M. Barnett**